FIDELITY AND CASUALTY COMPANY OF ·NEW YORK, Plaintiff, *v.* HELLENIC BANK TRUST COMPANY, Defendant.

City Court of New York, Trial Term, New York County, May 12, 1943.

*William Novok* for plaintiff.

*Aristotle Souval* for defendant.

SCHIMMEL, J. The plaintiff is the assignee of Great American Insurance Company. It was the practice of that company in the payment of certain obligations to issue a check when a written order or slip requesting it, initialed by the head of one of its departments and approved by a senior accountant, was submitted to the proper officers; the latter would then sign the check without further inquiry, as it was impractical for them to

investigate separately the purpose of each of the numerous checks which were necessarily drawn in connection with routine business. One Emmens was a trusted department head in the company's employ for many years. By initialing the proper slips and securing a senior accountant's approval, he caused four checks to be signed by the appropriate officers of the company, each drawn on the First National Bank and made payable to the order of the Hellenic Bank Trust Company, this defendant. There was no relationship, contractual or otherwise, between Emmens' employer and the defendant bank; the former owed no indebtedness of any kind to the latter. The first three checks dated respectively September 13, 1939, October 31, 1939, and November 29, 1939, were in the amount of $392.70 each and the last check dated December 29, 1939, was for $196.35. Emmens took each check, after it had been duly signed, to the defendant bank where he was a depositor; that bank allowed him to deposit the checks, upon which he had placed his personal indorsement, in his own account, and, after crediting him in each instance with the proceeds, to ultimately withdraw the same. An assistant treasurer of the defendant testified that he had been told by Emmens, when the latter presented the checks for deposit, that they had been given to him by the maker, his employer, in payment of his salary. It was not until after Emmens had closed out his bank account that his employer (plaintiff's assignor) discovered that he had perpetrated a fraud upon it when he procured the issuance of the checks as if they were to be given in payment of company obligations. Due demand was thereafter made upon the defendant for repayment of the funds unlawfully deposited by Emmens, but this was refused. The claim, essentially for moneys had and received, was assigned to the plaintiff which instituted this action.

The checks were not bearer instruments; although they were procured by the fraudulent act of the employee of plaintiff's assignor, they were nevertheless made payable to an existing payee, this defendant, to whom, and not to a fictitious or nonexistent person, the drawer intended them to be payable. (Cf. Negotiable Instruments Law, § 28, subd. 3; *Seaboard National Bank* v. *Bank of America,* 193 N. Y. 26.) Therefore, when Emmens brought the checks to defendant and asked that they be deposited in his account to his credit, it was the duty of the defendant to ascertain why, for what purpose, his employer had issued checks to its (defendant's) order, although not indebted

to it. The mere possession of the checks by Emmens did not give him the right to their proceeds. It did not confer upon him ownership or apparent ownership; it did not endow him with authority, actual or apparent, to make use of the checks.

" Possession of a bill or note unindorsed by the payee is not of itself evidence of title. It may have been acquired by fraud or theft." (*Hathaway* v. *County of Delaware*, 185 N. Y. 368, 374.) Hence, the defendant bank could not escape the duty of making proper inquiry. (*Matteawan Mfg. Co.* v. *Chemical Bank & Trust Co.*, 244 App. Div. 404, affd. on this point without opinion 272 N. Y. 411.) In that case, Mr. Justice TOWNLEY said, at page 412: "A check drawn to the order of the Chemical Bank on itself conveys nothing to it as payee as to the disposition of the funds and inquiry must be made elsewhere. This inquiry, of course, must take the form of securing instructions from plaintiff's duly authorized agents. No inquiry was made in this case. Whether the Chemical Bank was warranted in acting on the instructions of the deposit slip of the Mission which, of course, was not the payee of the check, can admit of but one answer, namely, that no such reliance was justified. Indeed, it has been so held by the Court of Appeals in *Sims* v. *U. S. Trust Co. of New York* (103 N. Y. 472)."

It was further said, at page 414: "The situation presented in the case then after analysis is a very simple one in which a bank having come into possession of funds and having received no proper instructions as to their disposition, gives the money to a depositor not entitled thereto. This is a plain though innocent conversion for which the bank is obviously liable and we think that the bank is equally liable to the plaintiff on both checks and that judgment should be directed accordingly." *Sims* v. *United States Trust Co. of N. Y.* (103 N. Y. 472) is pertinent. In that case, as in *Matteawan Mfg. Co.* v. *Chemical Bank & Trust Co. (supra)*, and as in the present case, a check was drawn to the order of defendant bank which accepted it and allowed withdrawal against it. The court, by RUGER, Ch. J., said, at page 476: " The use of the defendant's name as payee of the check indicated the drawer's intention to lodge the moneys in its custody and place them under its control, and nothing further than this was inferable from the language of the check. * * * The language of the check making the funds payable only upon the order of the defendant imposed upon it the duty of seeing that they were not, through its agency, improperly disbursed after it had received them. They could not safely pay out such funds except under the

direction of their lawful owner." The principles just quoted are expressly approved in *Potts & Co.* v. *Lafayette National Bank* (269 N. Y. 181, 185, 186), a case otherwise inapplicable.

Defendant contends that plaintiff's assignor was negligent. In relation to a similar contention in the *Matteawan Mfg. Co.* case (*supra*) it was said at page 416: "The other defense set up by the Chemical Bank is that the loss was caused by plaintiff's negligence in drawing the check. There was nothing negligent in drawing a check to the order of the Chemical Bank. It was done under a misapprehension of fact and nothing further was accomplished than to transfer the title of certain funds to the Chemical Bank itself." It does not seem to me that any negligence of plaintiff's assignor has been shown; but even if it be considered that it was negligent in issuing the checks and letting Emmens have them, it did not, by such acts, however negligent, induce the defendant to surrender to him the proceeds of checks made payable to its (defendant's) order. The latter must bear the responsibility for and suffer the consequences of its voluntary acts. (Cf. *Seaboard National Bank* v. *Bank of America, supra.*) True, it offers the excuse that it believed Emmens' statement that the checks were given to him in payment of his salary. But, instead of faith, there was ample ground for suspicion. It is a reasonable assumption that checks representing salary would be drawn to the order of the employee and not to that of the defendant, a banking institution in no way connected with the employer. Their issuance to the order of the defendant bank and their possession by another whose explanation of ownership was unusual were sufficient to have caused the bank to suspect that the checks "may have been acquired by fraud or theft". Reliance upon Emmens' statements, without inquiry of the maker of the checks, was unwarranted and will not relieve the bank of liability for the improper diversion of the funds lodged with it. (*Matteawan Mfg. Co.* v. *Chemical Bank & Trust Co.*, 244 App. Div. 404, affd. 272 N. Y. 411, *supra.*)

Plaintiff is entitled to recover the principal amount of each of the checks, with interest in the case of each check from the date the defendant collected it. (Cf. *Village of Elmira Heights* v. *Town of Horseheads*, 260 N. Y. 507, affg. 234 App. Div. 270.)

Judgment is therefore directed in favor of the plaintiff in the sum of $1,374.45 with interest as demanded in the complaint.