FEDERAL INSURANCE COMPANY, Appellant-Respondent, v. GROVELAND STATE BANK, Respondent-Appellant.

Fourth Department, April 11, 1974.

184

*Nixon, Hargrave, Devans & Doyle* (*Michael Tomaino* and *Peter J. Bush* of counsel), for appellant-respondent.

*Harris, Beach & Wilcox* (*Edward R. Macomber* of counsel), for respondent-appellant.

DEL VECCHIO, J. Plaintiff, as subrogee by virtue of payment under an employees' fidelity bond, seeks to recover $333,829.74 (less applicable salvage), the sum received by defendant Groveland State Bank on cashing checks drawn to its order by plaintiff's assignor, Lincoln Rochester Trust Company, and credited by defendant to an account of one of its depositors, Jaquish, an embezzling trust officer of Lincoln.

There is no dispute as to the events that gave rise to the litigation. During the period from May 13, 1966 to September 2, 1969 Jaquish, in his capacity as an employee in the personal trust department of Lincoln and by manipulation of records of the dividends receivable account, secured the execution of 33 checks by Lincoln as drawer against itself as drawee payable to Groveland. After the checks, varying in amounts from $3,000 to $32,500, had been properly signed, Jaquish transferred them to Groveland, the named payee, with which he had established an account in the name of Terra Bella Stock Farm, Richard Jaquish and Phyllis Jaquish. At the time the account was opened Jaquish had informed Groveland that he was purchasing a farm in the community, had inherited a large trust fund account from a recently deceased grandmother in Florida and would be expecting funds from the estate as well as selling property in Florida. Groveland had no knowledge of Jaquish's position as an employee of Lincoln. When the latter's checks were received by Groveland from Jaquish, Groveland, the payee, indorsed them for collection, received payment of the funds and credited them to Jaquish's account, from which all but $334.91 was subsequently withdrawn by Jaquish.

Shortly after the misappropriation of funds from Lincoln's dividends receivable account was discovered by State and Federal bank examiners in November, 1969 Jaquish disappeared and had not been apprehended at the time of this action.

After unsuccessfully requesting return of the funds paid over to defendant, plaintiff commenced the present litigation by service of a complaint alleging three causes of action: one for money had and received, the second for breach of warranty of title and the third to recover funds received by defendant with notice that Jaquish was not the owner of the checks with the result that defendant received no rights in the checks.

Defendant served an answer setting forth as affirmative defenses (1) that the checks were received by defendant in good faith and without notice that they represented embezzled funds and that the proceeds had been paid out by defendant prior to notice of the misappropriation, and (2) that the loss was occasioned at least in part by Lincoln's failure properly to supervise its employees, the handling of checks issued by it and the funds from which the misappropriation occurred.*

Defendant then moved for summary judgment, asserting that subdivision (1) of section 3–405 of the Uniform Commercial Code exonerates it from liability to plaintiff. Special Term denied the motion as to the first and second causes of action but dismissed the third cause of action. It also denied plaintiff's cross motion for summary judgment as to each cause of action, denied its motion to strike the first affirmative defense and granted its motion to strike the second affirmative defense. The case is before us on cross appeals, defendant again urging that it is free from liability by virtue of section 3–405 of the Uniform Commercial Code.

We are satisfied that defendant's reliance on that section is unwarranted. The section provides in part, " An indorsement by any person in the name of a named payee is effective if * * * (c) an agent or employee of the maker or drawer has supplied him with the name of the payee intending the latter to have no such interest." The consequence of the quoted provision is to make *forged* indorsements effective in the circumstance described, such that in the specified fact situation one who takes an instrument bearing a forged indorsement may prevail against a drawer who is the employer of one perpetrating a fraud. That the section does not contemplate genuine indorsements by named payees is apparent from the title of the section — " *Imposters*; Signature *in Name of* Payee ". (Emphasis supplied.) Furthermore, the benefit of the statute runs to those who acquire an interest subsequent to the forgery of the indorsement; it does not improve the status of the named

---

* A third defense of Statute of Limitations has been removed from the case by Special Term's dismissal from which no appeal has been taken.

payee or of the person who actually executes the indorsement (see *Pacific Ind. Co.* v. *Security First Nat. Bank,* 248 Cal. App. 2d 75). As the practice commentary appearing in McKinney's Consolidated Laws notes, the purpose of the section is to change prior law and to place the burden of verifying indorsements in certain limited instances "on the maker or drawer and to penalize him rather than the first solvent and identifiable *endorsee*". (Book 62½, Uniform Commercial Code, § 3–405; emphasis supplied.) Accordingly, as Special Term held, it has no application to the present case in which the payee's indorsements were concededly genuine, and it cannot serve to insulate the payee Groveland from liability otherwise existing to Lincoln.

We turn then to the question whether such liability is established on the record before us and whether plaintiff's cross motion for summary judgment should have been granted. We conclude that it has and that plaintiff is entitled to summary judgment on the first cause of action alleged.

It is undisputed that the 33 checks drawn by Lincoln naming Groveland as payee were received by Groveland from Jaquish. Groveland made no inquiry whatever of Lincoln as to the disposition of the proceeds, but received payment and deposited the funds to Jaquish's account, at whose order substantially all of the proceeds were disbursed to someone other than Lincoln, the owner of the funds. As Special Term observed, "There is nothing in the papers on the motion or cross motion to indicate that there was any business relationship between Lincoln and Groveland". On their face the checks, which lacked any designation of a remitter, demonstrated that the funds represented by them belonged to the drawer Lincoln. The designation of Groveland as payee gave notice, absent any obligation between drawer and payee, that the instruments were transferring to the payee funds of the drawer; by collecting the instruments and accepting such funds the payee received property of the drawer and was obligated to retain such funds subject to direction of the owner.

In a similar situation the court said in *Sims* v. *United States Trust Co.* (103 N. Y. 472, 475–476): "The check upon its face imported the ownership of the moneys represented in it by Dr. Sims, and his desire that its custody should be transferred from the People's Bank to the defendant. This certainly did not warrant the defendant in supposing that Dr. Sims thereby intended to pay $5,000 to Crowell [the person who delivered the check to the payee and to whom it disbursed the money], or place him for any purpose in possession of the fund. If he

had so intended, the check would have been made payable to Crowell's order, and there would have been no need of the agency of the defendant in the transaction. The use of the defendant's name as payee of the check indicated the drawer's intention to lodge the moneys in its custody and place them under its control, and nothing further than this was inferable from the language of the check. * * * The defendant could have refused to receive the deposit, or act as Dr. Sims' agent in transferring the funds from one custodian to another; but having accepted the office of so doing, it was bound to keep Dr. Sims' moneys, until it received his directions to pay them out. The language of the check making the funds payable only upon the order of the defendant imposed upon it the duty of seeing that they were not, through its agency, improperly disbursed after it had received them. They could not safely pay out such funds except under the direction of their lawful owner." (See, also, *Matteawan Mfg. Co.* v. *Chemical Bank & Trust Co.,* 244 App. Div. 404, mod. 272 N. Y. 411.) The same precept was recently restated in an action for money had and received in *Arrow Bldrs. Supply Corp.* v. *Royal Nat. Bank* (21 N Y 2d 428, 431): " At the outset, it should be noted that the defendant was negligent in disbursing plaintiff's money without receiving proper instructions and without having made any inquiry. (*Matteawan Mfg. Co.* v. *Chemical Bank & Trust Co.,* 244 App. Div. 404, 412–413, mod. 272 N. Y. 411; *Shipman* v. *Bank of State of New York,* 126 N. Y. 318, 326–327.) In receiving checks payable to itself, and signed by the plaintiff's president, the bank properly presumed that these checks had commercial significance. In such a situation, the bank cannot properly ascertain this significance by merely relying on the directions of one who is without either actual or apparent authority to represent the drawer. (*Matteawan Mfg. Co.* v. *Chemical Bank & Trust Co., supra; Fidelity & Cas. Co.* v. *Hellenic Bank Trust Co.,* 181 Misc. 40, 43.) "

In *Fidelity & Cas. Co.* v. *Hellenic Bank Trust Co.* (181 Misc. 40, 41–42, affd. 181 Misc. 44) cited in the *Arrow Bldrs.* case, the court, speaking of checks like those we are now considering, said: " although they were procured by the fraudulent act of the employee of plaintiff's assignor, they were nevertheless made payable to an existing payee, this defendant, to whom, and not to a fictitious or nonexistent person, the drawer intended them to be payable. * * * Therefore, when Emmens [the misappropriating employee] brought the checks to defendant and asked that they be deposited in his account to

his credit, it was the duty of the defendant to ascertain why, for what purpose, his employer had issued checks to its (defendant's) order, although not indebted to it. The mere possession of the checks by Emmens did not give him the right to their proceeds. It did not confer upon him ownership or apparent ownership; it did not endow him with authority, actual or apparent, to make use of the checks.''

Defendant's attempt to distinguish the cited cases on the ground that a depositor-bank relationship existed between the drawer and the payee must fail. In none of them is there any indication that the rule stated was dependent upon such a relationship, and in the *Fidelity & Cas. Co.* case the drawer was not a depositor of the payee bank — as the court noted, '' There was no relationship, contractual or otherwise, between Emmens' employer and the defendant bank '' (181 Misc., at p. 41). Moreover, in *Munn* v. *Boasberg* (292 N. Y. 5) the duty of inquiry before disbursement was imposed on a payee with whom the drawer had no relationship.

In the instant case the undisputed facts are that Groveland, as payee on the checks of Lincoln, received the proceeds of the checks and disbursed the same to its depositor Jaquish, without inquiry of the drawer-owner as to the proper disposition of the funds, despite the absence of any showing of entitlement to the checks or to their proceeds on the part of Jaquish, whose name appeared nowhere on the instruments. Such disbursement entitled plaintiff to recover back the funds belonging to it in an action for money had and received (*Arrow Bldrs. Supply Corp.* v. *Royal Nat. Bank,* 21 N Y 2d 428, *supra*; *Sims* v. *United States Trust Co.,* 103 N. Y. 472, *supra*; *Matteawan Mfg. Co.* v. *Chemical Bank & Trust Co.,* 244 App. Div. 404, mod. 272 N. Y. 411, *supra*).

Even if proved, neither of the affirmative defenses pleaded would defeat plaintiff's right of recovery on the first cause of action.

No authority is cited in support of the first affirmative defense by which defendant seeks relief from liability for its misapplication of Lincoln's funds on the ground that the improper payment to Jaquish was made without notice of Lincoln's ownership. On the contrary, the elements of the right of action sustained in the *Sims, Matteawan* and *Arrow* cases foreclose such a defense. The essence of the wrong is disbursement to an unauthorized recipient preceded by an absence of inquiry addressed to the owner of the funds. When a duty of inquiry exists, the one burdened with the duty is chargeable with the

knowledge which inquiry would have imparted (*Munn* v. *Boasberg,* 292 N. Y. 5, *supra*). It would be a strange contradiction if one bound to inquire but failing to do so could defend his subsequent misapplication of funds on the ground of ignorance which followed on the absence of inquiry.

Nor is the second affirmative defense of lack of care by Lincoln viable in the present case. Insofar as the defense has reference to a purported failure by Lincoln to "exercise proper control and supervision over its employees, the handling of checks issued by said assignor, and the funds from which Jaquish allegedly misappropriated said moneys'", thereby permitting Jaquish to procure the execution and secure the possession of the checks, the same defense was asserted and disposed of both in the *Matteawan Mfg. Co.* case (*supra*) and in the *Fidelity & Cas. Co.* case (*supra*), approved in *Arrow Bldrs. Supply Corp.* v. *Royal Nat. Bank* (*supra*). In *Matteawan* it was said (244 App. Div., at p. 416): "There was nothing negligent in drawing a check to the order of the Chemical Bank [the payee-defendant]. It was done under a misapprehension of fact and nothing further was accomplished than to transfer the title of certain funds to the Chemical Bank itself." In *Fidelity Cas. Co.* the court also found no negligence by the drawer and added (181 Misc., at p. 43): "but even if it be considered that it was negligent in issuing the checks and letting Emmens [the misappropriating employee] have them, it did not, by such acts, however negligent, induce the defendant to surrender to him the proceeds of checks made payable to its (defendant's) order. The latter must bear the responsibility for and suffer the consequences of its voluntary acts."

So here, if it could be said that Lincoln violated some duty of supervision of its employees, checks and funds owed to Groveland — which we think it could not — such violation would not be the proximate cause of the loss sustained. Rather, the loss was occasioned by the superseding act of Groveland in paying out Lincoln's funds to one without any right thereto, in dereliction of its obligation to make inquiry of the identified owner of the funds. That dereliction of duty by Groveland, which need not have been foreseen by Lincoln, was the competent producing cause of Jaquish's successful embezzlement.

For its affirmative defense of lack of care defendant also relies in part on sections 3-406 and 4-406 of the Uniform Commercial Code, which relate to negligence contributing to, or the duty of reasonable care to discover, *unauthorized signatures or alterations of an instrument.* Since the checks which gave rise

to this litigation involved neither unauthorized signatures nor alterations, the statutes cited are inapplicable.

Nor may defendant draw support from the statement in *Arrow Bldrs. Corp.* v. *Royal Nat. Bank* (21 N Y 2d 428, 433, *supra*) that the rules evolved with reference to forged signatures, by which a depositor owes a duty to his bank to examine canceled checks and statements received from the bank and to notify it of any irregularities, are applicable " where the plaintiff's negligence may have made the embezzlement possible ". The *Arrow Bldrs. Corp.* case dealt with obligations running from a depositor to its bank, with which we are not here concerned. Other than as sections 3–406 and 4–406 of the Uniform Commercial Code may have provided with regard to unauthorized signatures and alterations, there is no authority for extending the duty of inspection and examination of returned checks to benefit those outside the depositor–bank relationship. Any such extension may better take the same path as that traveled by the sections last referred to, culminating in legislative enactment.

Defendant's reliance on the doctrine of equitable estoppel as stated in *Bunge Corp.* v. *Manufacturers Hanover Trust Co.* (31 N Y 2d 223, 228) " ' where one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss, must sustain it ' ", is misplaced. By virtue of its misconduct in receiving Lincoln's funds and paying them to Jaquish without inquiry addressed to Lincoln, defendant fails to qualify as an " innocent " person.

Concluding as we do that plaintiff is entitled to judgment on its first cause of action for money had and received, we do not reach the question whether either party would be entitled to summary judgment on the second or third causes of action.

From the amended complaint and motion papers it appears that the amount of the judgment to which plaintiff is entitled may be less than the sum of $333,829.74 received by defendant, due to salvage available to plaintiff. Accordingly, summary judgment should be granted to plaintiff in the sum of $333,829.74, with interest from December 17, 1970, less applicable salvage, on the first cause of action.

MARSH, P. J., MOULE, SIMONS and MAHONEY, JJ., concur.

Order insofar as it denies summary judgment on the first cause of action unanimously reversed on the law with costs and summary judgment granted to plaintiff on the first cause of action in accordance with opinion by DEL VECCHIO, J., and otherwise order affirmed, with costs to plaintiff.