Jose **BORRELLO**, Plaintiff,

v.

**PERERA COMPANY, INC.,**
Defendant.

No. 72 Civil 5368.

United States District Court,
S. D. New York.

Sept. 20, 1974.

Frank & Fredericks, New York City, for plaintiff; Lawrence W. Pollack, Migdal, Tenney, Glass & Pollack, New York City, of counsel.

Greenwald, Kovner & Goldsmith, New York City, for defendant; Harry Litwin, New York City, of counsel.

## OPINION, FINDINGS OF FACT and CONCLUSIONS OF LAW

LEVET, District Judge.

This is a diversity action brought by plaintiff, Jose Borrello ("Borrello"), a citizen of the Republic of Argentina, residing in the City of Buenos Aires, Argentina, against defendant, Perera Company, Inc. ("Perera"), a New York corporation.

This action is brought by Borrello, the maker of two checks, against Perera, the payee, who received these checks by delivery from a third party, Marfinco, S. A. ("Marfinco") and deposited the funds in its corporate account but internally credited the sum to an account maintained with it by the third party, Marfinco. From the facts shown at the trial the parties were unable to determine who placed the following typed legend on the back of the checks: "For deposit only—Pay to the credit of Marfinco S.A."

After hearing the evidence presented by the parties, examining the exhibits, the pleadings, the briefs and the proposed Findings of Fact and Conclusions of Law submitted by counsel, this court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. Plaintiff is a resident of the City of Buenos Aires, Argentina. (Ex. 2, Q & A Nos. 1, 2.) [1]

2. Defendant is a New York corporation organized under the New York Stock Corporation Law (now Business Corporation Law) having its main place of business in New York County. (Tr. 3.)

3. This court has jurisdiction of the subject matter and of the parties in this action.

4. On September 20, 1971 plaintiff delivered to Waroquiers, S.A., a broker in Buenos Aires, two checks with a written instruction describing the purpose for the delivery of the checks and the procedure to be followed. (Ex. 2, Q & A Nos. 10–14, 23–24; Exs. 3, 4, 5A.)

5. The two checks delivered by plaintiff to Waroquiers were each dated September 20, 1971, each drawn on plaintiff's bank account maintained at the First National City Bank, New York, New York, each in the amount of $10,000 and each payable to the order of Perera as payee. (Exs. 3, 4.)

6. The checks were made payable to Perera at the request of the broker, Waroquiers, which was instructed by plaintiff to deliver the checks to Perera with instructions to hold the funds pending plaintiff's authorization to make payment against the delivery of Argentine external bonds to plaintiff. (Ex. 5A.)

7. Marfinco was a company engaged in the foreign exchange business and which had engaged in a course of business with Perera and maintained an account with Perera in connection with various foreign currency exchange transactions. (Ex. B; Tr. 16, 19, 29.)

---

1. References preceded by "Ex." are to the exhibits admitted into evidence during the trial; references preceded by "Q & A" are to the questions and answers contained in plaintiff's deposition, admitted in evidence as Ex. 1 and 2; references preceded by "Tr." are to pages of the stenographic transcript of the trial.

8. Subsequently, in some manner not disclosed, the two checks came into the possession of Marfinco. On September 20, 1971 Marfinco sent the two checks (Exhibits 3 and 4) with a group of other checks to Perera with a letter (Ex. 14) stating: "We enclose the following checks to be credited to our account with you:". One vonMihaly, a vice president of defendant corporation, testified that in September 1971 Marfinco was a customer of Perera and maintained an account with Perera. (Tr. 16, 19, 20.)

9. At some time (apparently before Marfinco mailed the checks to Perera (see letter Ex. 12)) some person typed on the back of each check (Exs. 3 and 4) the legend: "For deposit only—Pay to the credit of Marfinco, S.A." No evidence of authority for any such transfer was ever submitted to this court.

10. Some employee or officer, concededly acting for Perera, endorsed the two checks: "Pay to the order of Manufacturers Hanover Trust Company, New York, New York, for credit to the account of the First National Bank of Fleischmanns, Fleischmanns, N.Y." and deposited both checks in the Manufacturers Bank to the credit of defendant's account with the Fleischmanns bank. That amount was then credited on defendant's internal books to the account of Marfinco. (Exs. 3, 4; Tr. 24, 25, 28, 29.)

11. Perera then permitted Marfinco to use a portion of these funds to pay for certain orders. (Tr. 34.)

12. Marfinco's account with defendant was "closed" on February 17, 1972 by a transfer to a Perera suspense account of the then balance of $6,982.43. Defendant issued a check in favor of Marfinco for said sum dated March 24, 1972 and the check was paid by defendant's bank on May 17, 1972. (Exs. 15, B.)

13. Plaintiff demanded that defendant return the $20,000 by letter dated March 30, 1972 and defendant rejected the claim by letter dated May 10, 1972. (Exs. 6A, 10A.)

14. Prior to the transaction involved here, plaintiff had never had any business dealings with Marfinco or Perera. Neither did plaintiff have any discussions with any officer or employee of Waroquiers with regard to the firm of Marfinco. (Ex. 2, Q & A Nos. 40–44.)

15. Perera made no attempt to inquire as to Marfinco's title to the checks or the reason for Marfinco's possession of checks payable to the order of Perera. (Tr. 23–28.) Plaintiff was not indebted to defendant and there had been no prior business transactions between them. (Ex. 2, Q & A No. 20; Tr. 31, 32.)

16. Defendant made no effort to contact plaintiff or make any inquiry of plaintiff as to the purpose for which the checks were issued when it received and deposited the checks, or when it permitted the withdrawal of funds by Marfinco, or at any time between the deposit and March 30, 1972, when plaintiff demanded return of his funds. (Tr. 31–32.)

17. Thus, Perera, after acceding to Marfinco's conversion of the checks to defendant, compounded the theft by itself converting the funds to Perera without regard to plaintiff's rights. Clearly, Marfinco had no right to transfer any interest in the checks (which were payable to Perera) and Perera had no right to credit such funds to Marfinco nor to convert such funds to itself. This is a clear-cut case of plain chicanery upon the part of defendant.

18. Plaintiff is entitled to judgment for $20,000, together with costs, and to interest at the rate of 6% to run from September 23, 1971.

## DISCUSSION

Plaintiff, Jose Borrello, is an Argentine citizen who is suing defendant, Perera Company, Inc., a New York business corporation, for money it had received from the proceeds of two checks each in the amount of $10,000, drawn on September 20, 1971 by Borrello to the order of Perera. The action may also be de-

scribed as an action for conversion of the proceeds of the checks brought by the drawer, Borrello, against the named payee, Perera.

Through diversity the case was properly brought in this court. Title 28 U.S.C. § 1332(a).

On September 20, 1971 plaintiff went to his stock broker in Buenos Aires, a company known as Waroquiers, S. A. He brought with him two checks drawn on plaintiff's New York bank account at the First National City Bank, each in the amount of $10,000. Borrello requested the broker to arrange to purchase for him $20,000 worth of Argentine Government External Bonds. He told an employee of Waroquiers in charge of the matter that in order to consummate that transaction he had brought those checks. Waroquiers' employee told Borrello that in order to consummate the transaction the funds should be deposited with Perera in New York, represented to be a company which would be instructed to consummate the purchase upon appropriate instructions. In the presence of plaintiff, the Waroquiers' employee caused the name "Perera Company, Inc." to be typed in as the name of the payee in the blank space of each check. Plaintiff Borrello then delivered a letter of instruction (Ex. 5A) to Waroquiers, stating that the checks should be delivered to Perera as a guarantee of the availability of the funds and that the funds would remain deposited with Perera until further instructions. (See Findings of Fact 4–6.)

It is undisputed that Borrello had had no prior dealings with Perera and that Borrello had no indebtedness to Perera. (Finding of Fact 14.)

Perera was incorporated under the New York State Business Corporation Law to deal in foreign currency, stocks and coins. (Tr. 3.) It carried accounts for foreign exchange companies and foreign exchange stock brokers. (Tr. 16.)

Plaintiff instructed his stock broker to deliver the two checks to Perera to-gether with instructions that Perera hold the proceeds of the checks pending delivery to Perera of $20,000 worth of Argentine External Bonds and for Perera to cause the bonds to be delivered to plaintiff and the $20,000 to be released to the broker, Waroquiers, upon receipt by Perera of a letter from plaintiff authorizing such disbursement to the broker. (Ex. 5A.) The broker delivered no direct instructions to Perera. (Tr. 49.) Instead, the broker apparently delivered the checks to its affiliate, Marfinco, S. A., of Montevideo, Uruguay, and said Marfinco then transmitted the checks to Perera. (Ex. 14.) Perera's receiving stamp on the Marfinco letter shows that it was received by Perera on September 23, 1971 and that the letter covering a transmittal of fifteen checks to Perera included plaintiff's two checks totaling $20,000. The letter instructed Perera to credit all fifteen checks to the Marfinco account with Perera. (Ex. 14.)

Plaintiff's stock broker, Waroquiers, advised plaintiff that consummation of the bond purchase transaction would be delayed and the period of delay was four months. In fact, the bond purchase was never made and no bonds were delivered. (Ex. 2, cross-interrogatories Nos. 10–13.)

Obviously, Marfinco had no right to direct Perera to credit $20,000 to Marfinco's credit on the basis of the checks. Nevertheless, Perera endorsed the checks with its stamped endorsement and deposited the $20,000 in its bank account and that amount was then credited on Perera's internal books to the account of Marfinco. (Exs. 3, 4; Tr. 24, 25, 28–29.)

Clearly, defendant Perera had no right to give Marfinco credit for the two checks. Defendant was a business corporation engaged as heretofore stated. There was no basis for a conclusion that they were gifts.

Defendant made no attempt to inquire as to Marfinco's title to the checks or

the reason for Marfinco's possession of the checks payable to the order of defendant. (Tr. 23–28.) Moreover, defendant made no effort to contact plaintiff or make any inquiry of plaintiff as to the purpose for which the checks were issued when it received and deposited the checks, or when it permitted the withdrawal of funds by Marfinco, or at any time between the deposit and March 30, 1972, when plaintiff demanded the return of his funds. (Tr. 31–32.)

Defendant permitted Marfinco to use a portion of these funds which were credited to Marfinco's account to pay for its orders, all without any authorization from plaintiff. Then on February 17, 1972 defendant "closed" Marfinco's account by transferring the balance of $6,982.43 to a suspense account. Finally, on March 24, 1972 defendant issued a check in favor of Marfinco for this balance. (Findings of Fact 11, 12.)

Although defendant's manipulations with respect to the checks were somewhat involved, I must say that it was a clear-cut conversion of $20,000 of plaintiff's funds.

Defendant has presented a tortuous and specious theory in an attempt to create a defense to its acts. I see no merit in any of its contentions.

Of course, plaintiff gave no direct instructions to defendant. The instructions were given to Waroquiers which apparently, without authorization, turned the checks over to Marfinco which never acquired any right thereto. Marfinco's authorization could not be a basis for defendant's conversion.

Under the laws of the State of New York a payee may not obtain rights to collect a check to a third party without first making inquiry of the maker. Federal Insurance Company v. Groveland State Bank, 44 A.D.2d 182, 354 N.Y.S.2d 220 (4th Dept. 1974); Arrow Builders Supply Corp. v. Royal National Bank, 21 N.Y.2d 428, 288 N.Y.S.2d 609, 235 N.E.2d 756 (1968); Sims v. United States Trust Company, 103 N.Y. 472, 9 N.E. 605 (1886).

Perera was required to inquire as to the purposes for the issuance of the checks. Fidelity & Casualty Co. of N. Y. v. Hellenic Bank Trust Co., 181 Misc. 40, 45 N.Y.S.2d 43 (1943), aff'd mem. 181 Misc. 44, 47 N.Y.S.2d 295 (App.Term, 1st Dept. 1943).

None of the defenses set out by defendant has any merit.

Under the circumstances here, there was no contributory negligence by plaintiff. Plaintiff delivered the two checks to his stock broker with specific instructions. (Ex. 5A.) This involved no negligence on his part and, even if it were negligence, it was not the proximate cause of the loss. Matteawan Manufacturing Co. v. Chemical Bank & Trust Co., 244 App.Div. 404, 279 N.Y. Supp. 495 (1st Dept. 1935), aff'd 272 N. Y. 411, 3 N.E.2d 845 (1936); Fidelity & Casualty Co. of N. Y. v. Hellenic Bank Trust Co., supra. This doctrine does not apply to the present case. Bunge Corp. v. Manufacturers Hanover Trust Co., 31 N.Y.2d 223, 335 N.Y.S.2d 412, 286 N.E. 2d 903 (1972).

Defendant here was not an innocent person. Federal Insurance Company v. Groveland State Bank, supra; Rochester & Charlotte Turnpike Road Co. v. Paviour, 164 N.Y. 281, 58 N.E. 114 (1900).

The defense of equitable estoppel has not been maintained.

█ Moreover, the defense of alleged failure to inspect the checks returned from the bank is no defense to this defendant. This principle applies only between depositors and the banks. Wagner Trading Co. v. Battery Park National Bank, 228 N.Y. 37, 126 N.E. 347 (1920); Federal Insurance Company v. Groveland State Bank, supra, 44 A.D.2d 182, 354 N.Y.S.2d 220 (4th Dept. 1974).

The Uniform Commercial Code, Section 4–406, sets out the duty to examine returned checks and that section specifically refers only to the relationship between a bank and its customer. There was no such relationship between plaintiff and defendant.

The negligence provisions contained in the Uniform Commercial Code also are not applicable to this situation. Section 3–406 specifically refers to negligence which "substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature." The typed legend on the back of the two checks was neither a material alteration nor an unauthorized signature.

The defendant has sustained no valid defense.

## INTEREST

■ The law governing the date for the computation of pre-judgment interest is set forth in Civil Practice Law and Rules § 5001(b), as follows: "Interest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred."

In the instant case, defendant had the use of the $20,000 since September 23, 1971. Defendant's deposit of the funds into its own account, without inquiry of plaintiff as to the purpose for the issuance of the checks, and defendant's bookkeeping entries making the funds available to a third party, gave rise to the instant action.

In Menendez v. Faber, Coe and Gregg, Inc., 345 F.Supp. 527 (S.D.N.Y.1972) the court interpreted CPLR § 5001 as follows: "The rule is based upon the premise that the party to whom the money is owed has been deprived of the use of the funds and can be made whole only by the award of interest. Conversely, the party owing the money has had the use of the funds he was obligated to pay, and should be required to pay compensation by way of interest therefor." (345 F.Supp. at 546.)

In Collier v. Granger, 258 F.Supp. 717 (S.D.N.Y.1966), the court, in a stock fraud case, held: " * * * pre-verdict interest was due from the date of fraudulent sale, thus implying that though the fraud was of a continuing nature, the cause of action existed at the earlier time. In any event, the words 'earliest ascertainable date' convince us that the broad purposes sought to be accomplished by § 5001 are best served by a flexible, common sense approach to the question of when the cause of action initially arose." (258 F.Supp. at 719)

In the instant case, defendant misapplied the funds as soon as it received them and deposited them to its own account without holding them for the benefit of plaintiff. The wrong took place at that time and payment could then have been demanded by plaintiff.

Here, plaintiff, as a matter of law, is entitled to interest on the value of property converted, $20,000, computed from September 23, 1971, the date on which defendant converted plaintiff's property by crediting the proceeds of the two checks to Marfinco's account.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over this action. 28 U.S.C. § 1332(a).

2. The substantive law of New York governs the rights of the parties.

■ 3. The designation of Perera as payee gave it notice that the checks were transferring to it funds of plaintiff; by collecting the checks and accepting and depositing the funds, Perera received plaintiff's property and was obliged to retain the funds subject to plaintiff's direction. Federal Insurance Company v. Groveland State Bank, supra; Arrow Builders Supply Corp. v. Royal National Bank, supra; Sims v. United States Trust Company, supra.

■ 4. Upon receipt of the funds and prior to any disbursements, it was the duty of defendant to make inquiry of the plaintiff as to the purpose for delivery of the funds. Since an inquiry would have disclosed immediately the purposes for which the checks were issued, defendant is chargeable with knowledge of the facts. Munn v. Boasberg, 292 N.Y. 5, 53 N.E.2d 371 (1944); Fidelity & Casualty Co. of N. Y. v. Hellenic Bank Trust Co., supra.

5. Defendant has failed to prove by a fair preponderance of the credible evidence that plaintiff was negligent or that, even if negligent, any of plaintiff's acts was· the proximate cause of the loss. Matteawan Manufacturing Co. v. Chemical Bank & Trust Co., supra; Fidelity & Casualty Co. of N. Y. v. Hellenic Bank Trust Co., supra; Federal Insurance Company v. Groveland State Bank, supra.

6. The doctrine of equitable estoppel is not available to the payee in the case of delivery to it by a thief of an ordinary check requiring the endorsement of the payee; defendant's failure to take precautions and failure to make inquiry of plaintiff before disbursing the funds prevent defendant from being considered as a commercially "innocent" party. Bunge Corp. v. Manufacturers Hanover Trust Co., supra; Rochester & Charlotte Turnpike Road Co. v. Paviour, supra.

7. Defendant has failed to prove by a fair preponderance of the credible evidence that plaintiff should be estopped from recovering his funds.

8. Plaintiff owed no duty to defendant to examine the checks and endorsements received by him from the First National City Bank; the duty of inspection and examination of returned checks is owed only by those in a bank-customer contractual relationship. Wagner Trading Co. v. Battery Park National Bank, supra; Federal Insurance Company v. Groveland State Bank, supra.

9. Defendant's failure to make inquiry of plaintiff prior to disbursing the funds to the third party prevents it from relying on principles of estoppel. Federal Savings & Loan Insurance Corp. v. Kearney Trust Co., 151 F.2d 720 (8th Cir. 1945).

10. Plaintiff Borrello is entitled to judgment against defendant Perera for $20,000 plus interest from September 23, 1971, according to law, together with costs.

Settle judgment promptly upon notice pursuant hereto.