FEDERAL INSURANCE COMPANY, et al., Plaintiffs, Appellants,

v.

BANCO POPULAR DE PUERTO RICO, et al., Defendants, Appellees.

FEDERAL INSURANCE COMPANY, et al., Plaintiffs, Appellees,

v.

BANCO POPULAR DE PUERTO RICO, et al., Defendants, Appellants.

Nos. 82–1577, 82–1623.

United States Court of Appeals, First Circuit.

Argued Feb. 10, 1983.

Decided April 27, 1983.

Michael Maillet, New York City, with whom Jerome Murray, Hendler & Murray, P.C., New York City, Stanley R. Segal, and Ramirez, Segal & Latimer, San Juan, P.R., were on brief, for Federal Ins. Co. and Aetna Ins. Co.

Lawrence Odell, Hato Rey, P.R., with whom Patrick Duffy O'Neill, and Colorado, Martinez, Odell, Calabria & Sierra, Hato Rey, P.R., were on brief, for Banco Popular De Puerto Rico, et al.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

This diversity case was heard on cross-appeals from the district court's judgment of $25,454.26 in damages to plaintiffs, Federal Insurance Company and Aetna Insurance Company, for losses suffered by their assignor, International Charter Mortgage Corp. (ICMC), when Banco Credito and Banco Popular credited to an ICMC employee's credit card debt checks he embezzled from ICMC. The district court, holding that both ICMC and the banks acted negligently, found defendants Banco Popular, acting in its own behalf and in its role as successor in interest to Banco Credito, and the Federal Deposit Insurance Corporation (FDIC), acting as receiver for Banco Credito, liable for 25 percent of ICMC's losses. Plaintiffs and defendants appeal from this ruling, each claiming that the other should bear the entire loss. We affirm the district court's judgment.

## I.

The facts, for the most part, are undisputed. The record shows that ICMC is a Delaware corporation with its principal place of business in Hato Rey, Puerto Rico. It is engaged in the business of originating, servicing and selling real estate mortgages. Pursuant to that end, it maintained a large number of trust accounts, including one at Banco Popular, a general corporate account at Citibank, and various "warehousing lines," continuously available lines of credit, one of which was provided by Banco Credito.

The embezzlement was perpetrated by Jorge Pagan Lazardi. Between April 14, 1969 and June 29, 1979, Pagan held a number of important financial positions at ICMC, including Assistant Comptroller, Assistant Vice President, and acting head of the accounting department. His duties included preparation of financial statements

and supervision of bank reconciliations on corporate accounts. He was an authorized signatory of all ICMC bank accounts.

Between June 23, 1977 and February 26, 1979, Pagan embezzled approximately $400,000, of which $103,454.25 is at issue here. He embezzled the latter sum by drawing fifteen ICMC checks to the order of Banco Credito and fifteen to the order of Banco Popular. He then obtained the required second signature of an ICMC official on the checks, usually by stating that the checks were being used to pay interest on warehouse credit lines. The proffered explanations were not written on the checks themselves, but did appear on vouchers that ICMC kept. After the checks were signed, Pagan wrote his own Bank Americard or Visa number on the back of the checks and mailed them to the respective banks along with his own personal credit card bills. The banks credited Pagan's accounts accordingly, without ever inquiring of ICMC as to Pagan's authority to divert corporate checks to his personal account. Pagan then covered up his actions by making adjustments in the corporate books.

Pagan was dismissed in June 1979 as part of a general staff reduction. In August 1979, after a review of some of the accounts he had been handling, ICMC became suspicious. An external audit was undertaken. In February 1980, after the full extent of the loss was clear, ICMC filed a claim of loss with the plaintiffs, who reimbursed the company fully.

In July 1980 plaintiffs initiated an action against Banco Popular by service of process in New York. An action in New York was commenced against the FDIC in September 1980. On December 30, 1980 plaintiffs initiated the present subrogation action against defendants in the district of Puerto Rico.

On June 2, 1982, after a bench trial, the district court issued a memorandum and order. The court first held that, contrary to defendants' contentions, the action was not barred by the statute of limitations. The court then found that both Banco Popular and Banco Credito were negligent in crediting ICMC checks to Pagan's personal account without inquiring as to his authority, but that ICMC maintained a grossly negligent system of internal controls, enabling Pagan to carry out his scheme. Relying upon section 1802 of the Puerto Rico Civil Code, P.R. Law Ann. tit. 31 § 5141, the court reduced plaintiffs' recovery by 75 percent. All parties appealed.

## II.

Before turning to the merits, we discuss defendants' arguments that the action was barred by the statute of limitations. The district court undertook to apply the tort statute of limitations in section 1868 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31 § 5298. The statute provides that actions prescribe in one year "from the time the aggrieved person had knowledge thereof." The court interpreted it as granting plaintiffs one year to file the action from the time when ICMC discovered, or with reasonable diligence could have discovered, the embezzlement scheme and the banks' involvement. Finding the ineffectiveness of ICMC's control system irrelevant for purposes of determining when ICMC should have known of its claim against the banks, the court found that the statutory period commenced on November 20, 1979, the date it received an auditing report that provided it with sufficient detail to support a claim against the banks. The court then found that the action, brought in December 1980, was timely because plaintiffs tolled the statute of limitations by serving defendants in New York prior to November 1980.

Plaintiffs challenge the district court's analysis on two grounds. First, they claim that the district court erred by finding that the one-year period commenced running on November 20, 1979. They agree with the district court that the statute should be interpreted to run not only from the date of actual knowledge but from any earlier time when the aggrieved person *reasonably should have had knowledge* of the cause of action. However, they contend the

court departed from its articulated standard by refusing to consider ICMC's poor control system. Had ICMC had a proper control system, defendants argue, it would have uncovered the embezzlement before the last of the cancelled checks were returned to it in March 1979.

There is some force to the above contention. But while we see matters somewhat differently from the district court, we ultimately accept its determination that the statute commenced running on November 20, 1979.

■ Unlike the statute of limitations for medical malpractice actions [1], section 1868 does not provide that the action must be brought within one year from the time the injured person *reasonably should have known* of the injury. No Puerto Rico authorities have been called to our attention interpreting the statute here so as to run from the time the injured person could, with diligence, have discovered the injury or the existence of a claim. Such a construction is not, of course, impossible but neither can we say it is required. It is for the courts of Puerto Rico, not the federal courts, to extend the statutory law of the Commonwealth in uncertain cases. Here the district court found that ICMC first acquired sufficient knowledge of defendants' actions to file a complaint on November 20, 1979. That finding is not clearly erroneous, and as the date would satisfy the literal statutory language, we decline to reverse the lower court's finding.

Defendants' reliance on the discovery rule in other jurisdictions is misplaced. In most common law jurisdictions, the discovery rule emerged as a judge-made exception to the harsh statutory requirement that the action accrued when the wrong was committed regardless of the plaintiffs' knowledge. *See Sun 'n Sand, Inc. v. United California Bank,* 21 Cal.3d 671, 582 P.2d 920, 148 Cal.Rptr. 329 (1978); 51

Am.Jur.2d § 147 (1970). That such courts have limited their exception so as to cause the period to commence when the defendant should have known about the injury, provides little definitive support for interpreting a civil code, clearly stating that the period commences when the plaintiff had knowledge, any differently than the code's language dictates.[2]

■ Defendants' second argument regarding the statute of limitations is that the district court erred in holding that the service of process in New York tolled the statute. This argument is without merit. Puerto Rico law provides that

> Prescription of actions is interrupted by their institution before the courts, by extra-judicial claim of the creditor, and by any act of acknowledgment of the debt by the debtor.

P.R. Laws Ann. tit. 31 § 5303. Under New York law a claim is asserted and jurisdiction acquired upon the service of process. N.Y.Civ.Prac.Law §§ 304, 203(b). Therefore, the service of process in New York constituted "institution [of the claim] before the courts." Moreover, the New York events were also extrajudicial claims on the creditor. As of September 1980, within one year from the time ICMC learned of its claim against the banks, both of the defendants were aware of the claim against them. Thus the action was not prescribed under Puerto Rico law.

### III.

■ Defendants argue that the district court erred in finding the banks negligent. We disagree.

Under section 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31 § 5141

> A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done.

---

**1.** P.R. Laws Ann. tit. 26 § 4109.

**2.** Defendants' reliance on *Garcia v. Bernabe,* 289 F.2d 690 (1st Cir.1961), is similarly misplaced. In *Garcia* we did not have to decide when the Puerto Rico statute of limitations commenced to run. We merely stated in dicta that the general rule among all jurisdictions was that a statute of limitations commences to run when the plaintiff ought to have discovered the fraud.

In many jurisdictions, the banks would have been negligent as a matter of law merely by crediting a check made payable to their own order to the debt of a third party without inquiring of the drawer. *See, e.g., Sun 'n Sand, Inc. v. United California Bank*, 21 Cal.3d 671, 582 P.2d 920, 148 Cal.Rptr. 329; *Borrello v. Perera Co.*, 381 F.Supp. 1226 (S.D.N.Y.1974), *aff'd*, 512 F.2d 1380 (2d Cir.1975); *Sims v. United States Trust Co. of New York*, 9 N.E. 605, 103 N.Y. 472 (N.Y.1886). The Puerto Rico courts, to our knowledge, have not decided this issue, and there appears to be no Puerto Rico statute on point.[3] Nevertheless, whether or not a bank that credits a check drawn to its own order to a third party without inquiring of the drawer would be negligent as a matter of law, we hold that the district court did not err in finding that the banks acted negligently in the present case.

The district court found that in a period of two years Pagan applied 30 checks, all drawn on corporate accounts, to his personal debts. The diversion of these corporate checks, many of them drawn on trust accounts, to personal debts is in itself highly suspicious, but the banks should have been particularly troubled here because the credit card debts were substantial, round number figures incurred at hotels with gambling casinos. Moreover, the banks, because of their other commercial dealings with ICMC, knew Pagan's status at the company and that he earned less than $20,-000 per year there, making it highly unlikely that he was authorized to divert substantial amounts of corporate funds to his personal use. In addition, Pagan at one time deposited two visibly altered ICMC checks into his personal account at Banco Popular. While these checks are not at issue here, the district court found that this incident should have caused the bank to question Pagan's other activities. Given all of these

signs of wrongdoing, we do not think that the district court erred in finding that the banks were negligent for not inquiring into Pagan's authority.

■ The banks argue, however, that they had no duty to question Pagan's activities because under Puerto Rico law debts may be paid by third parties. P.R. Laws Ann. tit. 31 § 3162.[4] While the Puerto Rico statute might normally require creditors to accept payments from third parties, defendants have cited no authority for the proposition that the statute requires creditors to accept from debtors checks drawn on the accounts of third parties under circumstances pointing to the strong possibility that the debtor obtained the checks unlawfully. In the absence of any authority supporting defendants' position, we decline to read the statute as sheltering the banks' conduct.

## IV.

■ Plaintiffs contest the district court's findings that ICMC was also negligent. The district court found numerous faults with ICMC's internal control system. Foremost among the deficiencies was granting Pagan authority over both the execution of the checks and their reconciliation. Those broad powers, which for the most part were left unsupervised, permitted Pagan to draft the checks he desired and then cover up his deed by making the necessary adjustments in the books. The court also found troubling the ease with which Pagan obtained the required second signatures on the checks. The checks, which were not marked as to their purpose, were signed merely upon Pagan's oral representation as to why they were needed. Pagan was not required to present any invoice or bill upon obtaining the second signature. Nor was he questioned as to why trust accounts, kept for investors, were being used to pay warehouse credit

---

**3.** The Uniform Commercial Code is not applicable in Puerto Rico. The Puerto Rico law of negotiable instruments, P.R. Laws Ann. tit. 19 *et seq.*, does not apply to embezzlements that do not involve forged checks.

**4.** The statute states in part,
  Any person, whether he has an interest or not in the fulfillment of the obligation, and whether the debtor knows and approves it or is not aware thereof, can make the payment.

interest. Given these facts, which are not disputed, the district court did not commit plain error in finding ICMC to have been grossly negligent.

Plaintiffs contend that the district court improperly relied upon *Sole Electric, Inc. v. Bank of Nova Scotia*, 103 P.R.R. 590 (1975). In that case a paymaster drew up copies of certain corporate checks, forged endorsements on the copies, and deposited the checks in his own account. The company, after discovering the scheme, sued the drawee bank. The Supreme Court of Puerto Rico found that had the paymaster not been given authority to both draw checks and reconcile them, the company would have discovered the fraud when the first cancelled checks were returned. Therefore, the court held that the bank was liable only for the amount embezzled after the first cancelled checks were returned. *See also Portilla v. Banco Popular*, 75 P.R.R. 94 (1953).

For reasons that we discuss below, we agree with plaintiffs that *Sole Electric* is not controlling precedent here insofar as it freed the bank from almost all liability. That does not mean, however, that the Supreme Court of Puerto Rico's discussion of the employer's negligence is irrelevant here. There are substantial factual similarities between the two cases, and the court's analysis of the faulty nature of the employer's financial control system was certainly a precedent which the district court could properly rely upon.

### V.

All of the parties argue that the district court erred in apportioning the liability between them. In so doing plaintiffs rely primarily upon the fact that some courts have labelled actions similar to those performed by the banks here as "conversion." *E.g., Borello v. Perera Co.*, 381 F.Supp. 1226 (S.D.N.Y.1974), *aff'd*, 512 F.2d 1380 (2d Cir.1975). Comparative negligence, plaintiffs contend, is not a defense in an action for conversion.

■ The problem with this analysis is that it flies in the face of Puerto Rico law.

The Puerto Rico Supreme Court has stated that "conversion is merely a form of the fault (*culpa*) described in sec. 1802 of our Civil Code (1930 ed.)." *Heirs of Sorba v. Vinas*, 49 P.R.R. 31, 36 (1935). Under that section of the Code, "concurrent imprudence of the party aggrieved does not exempt from liability, but entails a reduction of the indemnity." Civil Code, 1930, § 1802, P.R. Laws Ann. tit. 31 § 5141. Thus even if the action could properly be labelled as one for conversion, the district court did not err under Puerto Rico law in reducing plaintiffs' award by the amount reflecting ICMC's own negligence.

Plaintiffs are joined by defendants in claiming that under the Puerto Rico law of negotiable instruments, P.R. Laws Ann. tit. 19 *et seq.*, and *Sole Electric*, damages may not be apportioned between the parties. The plaintiffs contend that under *Sole Electric* the employer's own negligence can only be a defense when the bank itself is free from fault. The defendants argue that under *Sole Electric* the banks may only be liable for the losses incurred after the first cancelled checks were returned to ICMC.

We need not decide what *Sole Electric* requires where both parties were negligent—although we note that we do not see it as inconsistent with apportioning the damages in such a case—because we do not find it controlling here. In *Sole Electric* the Supreme Court of Puerto Rico relied upon *Portilla v. Banco Popular*, 75 P.R.R. 94 (1975). In that case an employer sued the depository bank for losses incurred when an employee forged checks. The court found that the bank had been under a statutory obligation to refrain from honoring forged checks, Commerce Code, 1930 § 376, P.R. Laws Ann. tit. 19 § 24, and that the employer had been under a contractual obligation with its own bank to use due care in reviewing cancelled checks. The court was thus faced with allocating the losses resulting from both parties' breach of their obligations. The solution that the court reached was that the bank would be

liable only for the losses incurred prior to the return of the cancelled checks.[5] That holding was extended in *Sole Electric* to the situation in which the bank honored forged endorsements and the employer was grossly negligent.

■ The instant case is readily distinguishable from both *Portilla* and *Sole Electric.* It was not brought against a depository bank, nor did it involve forgery. Hence the special contractual and statutory obligations significant in *Portilla* and *Sole Electric* do not apply here. Therefore, in the absence of any authority from the Supreme Court of Puerto Rico on the subject, we do not think that the district court erred by finding that the relationship between the parties here was governed by the tort law's general requirement to use due care in dealing with others. *But cf. Sun 'n Sand, Inc. v. United California Bank,* 21 Cal.3d 671, 582 P.2d 920, 148 Cal.Rptr. 329 (U.C.C. provisions intended to apply primarily to drawer and depository bank applicable in action against collecting bank). As all the parties here failed to use due care, the district court did not err in applying section 1802 of the Civil Code and allocating their liability accordingly.

We have reviewed all of the other arguments raised by the parties and find them to be without merit.

*Affirmed.*

---

**5.** Under the Uniform Commercial Code, a customer who failed to use due care reviewing the cancelled checks would be precluded from collecting any recovery from the bank for losses arising from unauthorized signatures or alterations unless the bank also failed to use due care, in which case it would be wholly liable. U.C.C. § 4–406.