COUNTY OF ONEIDA and GARDNER O. HART, as County Treasurer of Oneida County, Respondents, *v.* FIRST CITIZENS BANK AND TRUST COMPANY OF UTICA, Appellant. (Action No. 1.)

COUNTY OF ONEIDA and GARDNER O. HART, as County Treasurer of Oneida County, Respondents, *v.* FIRST CITIZENS BANK AND TRUST COMPANY OF UTICA, Appellant. (Action No. 2.)

Fourth Department, May 20, 1942.

*Ferris, Burgess, Hughes & Dorrance* [*Thayer Burgess, George H. Kenny* and *Robert Groben* of counsel], for the appellant.

*Francisco Penberthy* [*Milton D. Nelson* of counsel], for the respondents.

PER CURIAM. The judgments appealed from were entered on orders granting the plaintiffs' motions for summary judgment. The orders struck out the defendant's answer and dismissed its counterclaim in each action. In Action No. 1 the plaintiffs recovered judgment for $52,197.22 which recovery included an item of interest in the amount of $8,260.54. In Action No. 2 the plaintiffs recovered judgment for $23,072.10 which recovery included an item of interest in the amount of $6,206.28. The plaintiff county operated a mutual self-insurance plan in which plan the cities, towns and villages of the county participated. The plan was managed by a committee of five men appointed by the chairman of the board of supervisors of the county of Oneida. Frank P. Gifune, assistant clerk of the board of supervisors, was appointed clerk of this committee with the title of "Director." Over a period of many years, Gifune prepared the false and fraudulent claims for compensation referred to in the complaints, had them approved by the chairman of the compensation committee, who was innocent of the fraud, presented the fraudulent claims to the comptroller of the county, who, unaware of the fraud, issued the county warrants described in the complaints. These warrants were drawn to the order of the fictitious payees on the treasurer of the county of Oneida. Gifune forged the names of the fictitious payees to the warrants, presented them to the defendant bank and received the proceeds thereof which he converted to his own use. The defendant, in turn, presented the warrants, which it had cashed, to the county treasurer and received payment thereon. The county treasurer was unaware of the fraudulent nature of the various transactions upon which the warrants were founded. Upon discovery of the fraud, the plaintiffs tendered the warrants to the defendant and demanded the return of the moneys paid to the defendant thereon. Upon defendant's refusal to comply with the demand, these actions, for money had and received, followed. In addition to a denial of liability, the defendant interposed, among others, the defense of estoppel and of laches and a counterclaim in each case. The counterclaims charged the plaintiffs with gross negligence to the defendant's damage to the amount demanded in each action. The court struck out the answers and dismissed the

counterclaims as insufficient in law. We think this was reversible error. An action for money had and received, and these are such (*Cohen* v. *City Company of New York*, 283 N. Y. 112; *Miller* v. *Schloss*, 218 id. 400; *White* v. *Continental National Bank*, 64 id. 316), is in its nature a substitute for a suit in equity and it is to be ruled by broad considerations of equity and justice. Such an action aims at the abstract justice of the case, unfettered by technical rules. It is the most favorable way in which a defendant can be sued. In such an action the defendant " may defend himself by everything which shows that the plaintiff *ex æquo et bono* is not entitled to the whole of his demand or any part of it." (*Chapman* v. *Forbes*, 123 N. Y. 532, 536; *American Surety Co.* v. *Conner*, 251 id. 1, 11; *Myers* v. *Hurley Motor Co.*, 273 U. S. 18, 24; *United States* v. *Jefferson Electric Co.*, 291 id. 386, 402, 403.)

The pleadings and the moving and reply affidavits contain charges and countercharges of negligence, ordinary and gross, and a defense of estoppel. These were triable issues (*City of New York* v. *Bronx County Trust Co.*, 261 N. Y. 64, 70), and the decision of such serious questions should not have been " flung off on a motion for summary judgment." (*Gravenhorst* v. *Zimmerman*, 236 N. Y. 22.) If it should appear upon a trial of the issues that both parties were negligent, the trial court might, upon equitable principles, apportion the loss according to the degree of the negligence of the respective parties. Moreover, in this form of action, interest is not recoverable as a matter of right. In *Pease* v. *Barber* (3 Caines, 266), Chief Justice KENT, discussing the question of the right to recover interest in an action for money had and received, said (at p. 267): " There may be cases in which the defendant ought to refund the principal merely, and there may be other cases in which he ought, *ex æquo et bono,* to refund the principal with interest. Each case will depend upon the justice and equity arising out of its peculiar circumstances, to be disclosed at the trial." The rule laid down by Chief Justice KENT in that case has been cited with approval in *National Bank of the Commonwealth* v. *Mechanics' Nat. Bank* (94 U. S. 437, 440); *Nolte* v. *Hudson Navigation Co.* (8 F. [2d] 859, 867); *Woerz* v. *Schumacher* (37 App. Div. 374, 379; affd., 161 N. Y. 530), and *Tuzzeo* v. *American Bonding Co.* (226 id. 171, 179). It appears from the plaintiffs' moving affidavits that had the funds in suit remained on deposit with the banks designated by the board of supervisors as depositaries for county funds, and the defendant was one, the county would have received not to exceed one per cent interest thereon. There is no suggestion in the papers that the defendant enriched itself in any degree by cashing the warrants in suit.

The judgments and orders should be reversed on the law and facts and new trials should be granted, with costs to the appellant to abide the event, and the motions should be denied, without costs.

In Action No. 1: All concur, except CUNNINGHAN and TAYLOR, JJ., who dissent and vote for affirmance in an opinion by CUNNINGHAM, J. Present — CROSBY, P. J., CUNNINGHAM, TAYLOR, DOWLING and McCURN, JJ.

In Action No. 2: All concur, except CUNNINGHAM and TAYLOR, JJ., who dissent and vote for affirmance in an opinion by CUNNINGHAM, J.

CUNNINGHAM, J. (dissenting in both actions). A plan for mutual workmen's compensation insurance was adopted by the county of Oneida and the cities, towns and villages in the county. Frank P. Gifune, assistant clerk of the board of supervisors of such county, was made director of such plan. Gifune from time to time prepared fraudulent claims and vouchers, each of which set forth that the claimant named therein while in the employ of one of the participating municipalities, sustained an injury and was entitled to workmen's compensation. Such statements were false and the persons named as claimants had not been injured and were not entitled to compensation. The claims and vouchers were signed by Gifune and by the chairman or acting chairman of the committee in charge of the plan and were presented by Gifune to the comptroller of the county who issued county warrants therefor and turned them over to Gifune. Gifune forged the names of the payees on the warrants and presented them to the defendant bank and received cash thereon. The defendant indorsed the warrants or placed thereon its "received payment" stamp and presented them to the county treasurer for payment. The county treasurer drew checks for the amounts of such warrants and delivered them to the defendant and the amounts thereof were charged against the funds of the county on deposit in the defendant bank.

The motion for summary judgment was made upon affidavits submitted on behalf of the plaintiffs and reply affidavits were filed on behalf of the defendant. The answer of the defendant standing alone is not sufficient to defeat the motion. The affidavits on behalf of the defendant must show that the defendant has defenses which probably can be proved. It is now said that there may be equitable defenses to this action, but there is nothing in the papers to even suggest that the bank has any equitable defenses or setoffs. The failure of defendant's affidavits to show that it has any such defenses or setoffs made it the duty of the court below to grant a summary judgment.

The defendant obtained the money on fraudulent warrants to which it did not have title and which did not give it the right to take the money of the county. The money was wrongfully obtained by the defendant and is wrongfully retained by defendant. It does not show any title to the money. Under similar facts it was held that a defense was not presented and a judgment against a bank was directed in favor of the plaintiffs. (*Cohen* v. *Lincoln Savings Bank*, 275 N. Y. 399.)

The comptroller was without power to issue warrants upon fraudulent claims and the warrants were absolutely void. The act of the comptroller in issuing such warrants was an illegal official act. The defendant bank did not acquire title to the warrants because they were issued without legal authority. The treasurer of the county did not have the authority to pay such warrants. His act in doing so was void and title to the money never passed from the county. When performing such illegal acts the officials cease to be agents of the county and the county is not bound by such acts. The county is merely seeking to recover its own money which was illegally paid out and to which the county still has title.

The defendant bank made it possible for Gifune to obtain money on the fraudulent warrants. If the bank had not been willing to pay in cash to Gifune the amounts of these void warrants, he would have been unable to collect any money thereon and his scheme to obtain money in this fraudulent manner would have collapsed.

It is impossible to conceive how the bank officials could have thought that Gifune was the holder of thousands of dollars of these drafts and that he had the right to cash them from time to time and to personally receive the money thereon. It is hard to believe that the bank would, without investigation, pay to Gifune such huge amounts of money on so many occasions.

Of course, the negligence of plaintiffs' officials is not a defense herein, but even if it were, the bank could relieve itself from liability only upon showing that in making the payments it was free from negligence. (*Paton Co., Inc.*, v. *Guaranty Trust Co.*, 227 App. Div. 545, 549; affd., 254 N. Y. 621.)

The foregoing decision is but a recognition of the well-established principle of law that equitable rules will not be applied in favor of a defendant who has been grossly negligent. (*United States* v. *Forness*, 125 F. [2d] 928, 940.)

Whether the notes were negotiable in form or not, the defendant bank did not acquire any right to enforce payment of the instruments. (Neg. Inst. Law, § 42; *Anglo-South American Bank, Ltd.*, v. *National City Bank*, 161 App. Div. 268; affd., 217 N. Y. 726.)

When the defendant presented the warrants to the county treasurer for payment, it impliedly represented and warranted that the warrants had been indorsed by the respective payees and that they were valid obligations of the county and that the defendant had good title thereto. As a matter of fact, the warrants which the defendant presented for payment were void and the defendant did not have the right to collect money thereon and receive the county's money without consideration, and did not obtain title to such money. It now holds such money without legal warrant and refuses to return it. Its act in obtaining the money was illegal and its retention of the money is illegal.

The officials of a municipality cannot bind it by making or ratifying a fraudulent contract, and the acts of honest officials in recognition of the contract, while ignorant of the fraud, do not ratify it. (*Nelson* v. *Mayor, etc., of New York*, 131 N. Y. 4, 14.)

In *Board of Supervisors* v. *Ellis* (59 N. Y. 620) it was said (at p. 624): " A board of supervisors has no power to audit and allow accounts not legally chargeable to their county; and if it attempts so to do, it is an act in excess of jurisdiction, done without the power to make it valid, and is null and void."

The defendant claims that the plaintiffs are estopped from claiming that the warrants are not valid. However, an official of the municipality may not " ' impose liability upon the city by estoppel.' " (*N. Y. City Employees' Retirement System* v. *Eliot*, 267 N. Y. 193.)

In *New York Tel. Co.* v. *Board of Education* (270 N. Y. 111), it is said (at p. 120): " The defendant is not bound by the illegal acts of its former or present members."

The audit of the illegal claims by the comptroller was void. (*Haswell* v. *Mayor, etc., of City of N. Y.*, 81 N. Y. 255, 259; *People* v. *Journal Co.*, 213 id. 1, 7.)

The summary judgment in favor of the plaintiffs should be affirmed, with costs.

TAYLOR, J., concurs with CUNNINGHAM, J.

In Action No. 1: Judgment and order, so far as appealed from, reversed on the law and facts and a new trial granted, with costs to the appellant to abide the event, and motion denied, without costs.

In Action No. 2: Judgment and order, so far as appealed from, reversed on the law and facts and a new trial granted, with costs to the appellant to abide the event, and motion denied, without costs.