George M. Fanelli, J.
In this action plaintiff seeks to recover back money voluntarily paid to the Village of Scarsdale pursuant to an alleged illegal provision of the Village Code, adopted pursuant to section 179-1 of the Village Law and to declare such provision null and void. Under such provision or regulation plaintiff, a builder and developer, was required, as a condition to obtaining the Planning Commission’s approval of its proposed plan for the development of land, to pay to the village a cash deposit of $250 for each lot in the subdivision in lieu of land reservation for park, playground and recreational purposes. [See 35 Misc 2d 450.]
Both sides move for summary judgment (Rules Civ. Prac., rule 113). The attorneys for the respective parties have submitted a 1 ‘ stipulation of facts ’ ’ in conjunction with the complaint, in the hope that the question now to be decided on this motion will be strictly one of law.
*659 This action, commenced in September, 1961, was sparked by a decision and opinion rendered by Mr. Justice Coyle in December 1960, in the case of Gulest Associates v. Town of Newburgh (25 Misc 2d 1004, affd. 15 A D 2d 815) which, like the present case, involved a situation where a real estate developer sought preliminary approval from a Planning Board for its subdivision plans and, in both instances, was required, as a condition to such approval, to pay a sum of money for use by the municipality for park, playground and recreational purposes in lieu of a reservation of land. Both cases are factually distinguishable, and, consequently, the holding in Gulest is. not determinative of the issues in the case at bar. In Gulest, the plaintiff attacked on constitutional grounds (1) the enabling act (Town Law, § 277, subd. 1) which empowered the Planning Board, in a proper case where it would be impractical to use land for suitable parks, as a condition to plat plan approval, to require the payment of money to be “ available for use by the town for neighborhood park, playground or recreation purposes including the acquisition of property”; and (2) the regulation of the Town Board of the Town of Newburgh adopted thereunder. There, the plaintiff developer refused to pay the cash deposit required ($50 a lot) and promptly commenced an action for a declaratory judgment and injunctive relief, to free its land from the payment of the money required. The court, in striking down as illegal and void that portion of section 277 of the Town Law and the regulation of the Town Board of the Town of Newburgh, did so upon the ground that such portion of the statute and the regulation were unconstitutional as applied to the facts in that case because they were vague, indefinite and uncertain to the extent that the Town of Newburgh could use such moneys for the benefit of the town as a whole for general recreational purposes and not necessarily for the benefit of the future residents of the area covered by the particular plat.
In the case at hand, the power of the Planning Board is derived from section 179-1 of the Village Law. Here, too, the statute provides for the reservation of land in a plan for a proposed development for “ a park or parks suitably located for playground or other recreation purposes ”, but it goes on to further provide that such “ planning board may waive subject to appropriate conditions and guarantees * * * as it may determine the provision of any or all such improvements as in its judgment of the special circumstances of a particular plat or plats are not requisite in the interests of the public health, safety and general welfáre ”. However, most important of all, is the fact that unlike the developer in Gulest, the present plain *660 tiff did not refuse to pay the money requested by the village authorities and did not seek an adjudication of its jural rights with respect to such condition required of it prior to obtaining any Planning Board approval. Instead, as the facts will show, plaintiff did on October 30, 1969' voluntarily pay to the village the sum of $6,000 for the approval of 24 lots in the subdivision plan and, it was not until after the decision in Qulest, that plaintiff decided to seek a refund of said money upon the theory that, while the enabling statute (Village Law, § 179-1) may not be unconstitutional per se, yet, said money was paid under an illegal and void regulation of the Village of Scarsdale adopted thereunder, being intended to be the “ appropriate conditions and guarantees” mentioned in the statute as the waiver for the land reservations.
Again turning to the facts in this case, it appears that in 1956 when plaintiff obtained defendant Planning Commission’s approval of a subdivision plan for the “first section” of the subject property, the commission regularly required developers to set aside lands for parks or playground purposes up to 10% of the area in the subdivisions. In accepting such approval plaintiff agreed to set aside further park and playground lands for the entire subdivision, which action would be taken after approval of the “ second section ” of the subdivision. Later on, in September, 1957, both the Planning Commission and the Board of Trustees, in attempting to carry out the aforementioned alternative “ conditions and guarantees ” set forth in section 179-1 of the Village Law, and in keeping with the procedures adopted by communities in other parts of the country, and in the light of the afore-mentioned provisions of section 277 of the Town Law, enacted a regulation empowering the Planning Commission, after taking into consideration the “ character and recreational needs of the neighborhood in which the subdivision is located, the suitability of land in the subdivision for park and playground purposes by reason of location, access, grade or cost of development or maintenance and the possibility that land in the vicinity of the subdivision will serve, in whole or in part, the park and playground needs of such subdivision ’ ’ to relieve a subdivider of the burden of appropriating land by requiring the payment of $250 per lot in the subdivision in lieu of the said 10% land reservation. In 1958 plaintiff applied for approval of its subdivision plan concerning the remaining portion (section 2), and, subsequently, such approval was granted subject to said money deposit of $250 per lot. Finally, on October 30, 1959 plaintiff deposited with the village the said sum of $6,000 for *661 24 lots in both sections of the subdivision, and it is this money which plaintiff seeks to recover back.
In support of its action and the present motion for summary judgment plaintiff relies heavily upon the holding in Gulest (25 Misc 2d 1004, affd. 15 A D 2d 815, supra). However, this court is of the opinion that plaintiff cannot recover back the $6,000 under any circumstances, according to the facts as here presented, even assuming, but not deciding, that the Scarsdale regulation is unconstitutional and illegal. It appears without question that in its dealings with defendants the money paid by plaintiffs was done so without any duress, but voluntarily and without protest, and under no immediate pressure to escape a penalty. Plaintiff received a benefit from the payment made to defendants to the extent that its lands were freed from the reservation of the land requirements, and it has already sold off 19 out of the said 24 lots. Consequently, this court concludes that it need not and does not now pass upon the legality or constitutionality of the 1957 regulation under the facts as pre-r sented in this case in order to make a determination of the motion and cross motion for summary judgment. Money paid under an unconstitutional or invalid statute or ordinance, without circumstances of compulsion is paid under a mistake of law, and so cannot be recovered (70 C. J. S., Payment, § 156, p. 366; 5 Williston, Contracts [Rev. ed.], § 1582; 2 New York Law of Contracts, § 1088; 40 Am. Jur., Payment, § 205 et seq.; cf. Mercury Mach. Importing Corp. v. City of New York, 3 N Y 2d 418). Plaintiff’s attack upon the constitutionality of the resolution is solely for the purpose of obtaining a refund of the money paid and not for the purpose of freeing its land from any arbitrary, capricious or other form of confiscation of said property. Having benefited from the regulation and having divested itself of title to 19 lots, plaintiff is, in short, now estopped from questioning its validity (cf. Belmont Homes v. Kreutzer, 6 A D 2d 697) since it seeks to recover its money back and still retain the benefits of the commission’s approval of its entire subdivision plat plan.
In this case, there is nothing before the court to indicate any involuntariness about plaintiff’s payment, or that it was made in the presence of duress and under an occupational or “ business compulsion ”, or that failure to make such payment would have required plaintiff to discontinue the conduct of its business and thus be deprived from earning a livelihood. These latter circumstances were matters which confronted the Court of Appeals in the recent case of Five Boro Elec. Contrs. Assn. v. *662 City of New York (12 N Y 2d 146) where several hundred electricians were allowed to recover excess license and renewal license fees paid to the City of New York under a local law later declared unconstitutional. Here, in the case at bar, however, the situation is quite different. Plaintiff had a preliminary remedy had it felt aggrieved by the adoption of the 1957 regulation, and no facts have been presented to the court to indicate that plaintiff would have been deprived of the reasonable use of its lands during the pendency of a lawsuit to attack the legality or constitutionality of the Scarsdale regulation before it paid the money in question. Everything before the court points to a business arrangement entered into between plaintiff and the village, and concluded in an amicable fashion resulting in plaintiff thanking the Village Attorney for his “ cooperation ” in the matter.
Accordingly, in the light of the afore-mentioned, this court is led to the inescapable conclusion that there is no merit to this action under the facts here presented, and that it is warranted as a matter of law in dismissing the complaint. Thus, plaintiff’s motion is denied, and defendants’ cross motion for summary judgment dismissing the- complaint, is granted.