■ JENAD, INC., Appellant, v. VILLAGE OF SCARSDALE et al., Respondents. — In an action to recover money paid by the plaintiff, a builder and developer, to the defendant Village of Scarsdale, pursuant to an alleged illegal provision of the Village Code adopted pursuant to section 179-l of the Village Law, and to declare such provision null and void, the plaintiff appeals from an order of the Supreme Court, Westchester County, entered April 1, 1963, which denied its motion for summary judgment under rule 113 of the former Rules of Civil Practice, and which granted the defendants' cross motion for summary judgment dismissing the complaint. Order reversed, with $10 costs and disbursements; plaintiff's motion for summary judgment granted; and the defendants' cross motion denied. In 1958 the plaintiff, a builder and developer of real property for residential use and the owner of certain undeveloped land within the Village of Scarsdale, applied to the Planning Commission of the village for approval of a subdivision plan. In May, 1959 the Planning Commission approved the subdivision plan, subject to the requirement that the plaintiff deposit with the village $250 for each lot in the subdivision, to be used for park, playground and recreational facilities, in lieu of any land dedication for park, playground and recreational purposes, as provided in section 179-l of the Village Law. In October, 1959 the plaintiff deposited with the village $6,000 in partial compliance with this condition. In 1961 plaintiff instituted the present action to recover the $6,000, on the ground that the provisions of the Scarsdale Village Code, pursuant to which the plaintiff, as a condition to obtaining approval of its proposed plan, was required to pay to the village $250 for each lot in the subdivision in lieu of land reservation for park, playground and recreational purposes, was illegal and wholly without force and effect. Thereafter, the plaintiff moved for summary judgment under rule 113 of the former Rules of Civil Practice and the defendants made a cross

motion for similar relief. The Special Term granted the cross motion and dismissed the complaint. In effect, the learned Special Term held that even if the provisions of the code were illegal, the plaintiff was barred from asserting a claim for a refund because of its failure to formally protest the payment or to otherwise indicate that the payment was being made involuntarily. In our opinion, the decision in *Gulest Associates* v. *Town of Newburgh* (25 Misc 2d 1004, affd. 15 A D 2d 815) is dispositive of the constitutional issue here raised and compels a determination that the subject provisions of the Village Code are illegal and void. In that case, it was held that section 277 of the Town Law and the regulations adopted thereunder (the provisions of which are virtually identical with the provisions of the Scarsdale Village Code) were unconstitutional insofar as that section required the payment of a certain sum per lot in the proposed subdivision in lieu of a reservation or dedication of land. We conclude that the law and regulations struck down in the *Gulest* case are indistinguishable from the code provision here in issue. While it is true that section 277 of the Town Law made no provision for the establishment of a special recreation or playground fund, the regulations adopted in implementation of the statute provided, as at bar, for the establishment of a "special fund for the future acquisition and/or improvement of recreational facilities in the Town." Nevertheless, it was held in *Gulest* that the funds so earmarked were not limited in their use for purposes which would be directly beneficial to the residents of the proposed subdivision. Similarly, in the case before us, no limitations have been imposed or standards created whereby the funds must be utilized for the benefit of the residents of the subdivision — the test established by the *Gulest* decision. Having concluded that the code provisions in issue are illegal and void, the next question to be determined is whether plaintiff is now precluded from seeking recovery because of its failure to formally protest the payment. In our opinion, the operative facts in this case bring it within the purview of the decision in *Five Boro Elec. Contrs. Assn.* v. *City of New York* (12 N Y 2d 146). We find in the circumstances of the case at bar the same element of duress which caused the Court of Appeals in the *Five Boro* case to conclude that protest was not required in view of the compulsory nature of the exorbitant license fees. We can ascertain no meaningful distinction between the illegal fee required (in the *Five Boro* case) to be paid by the electricians in order to ply their trade and the illegal exaction required to be paid by the plaintiff here in order to engage in its business of developing land for residential use. The case (*Mercury Mach. Importing Corp.* v. *City of New York*, 3 N Y 2d 418), relied on by the court below, is clearly distinguishable. In that case, it was held that taxes paid without protest could not be recovered when the statute under which they were collected was later declared unconstitutional. The predicate for such determination, however, lay in a rule of practicality directed at the potential disruption of governmental finances, since "Where protest has been interposed, the municipality is notified that it may be obliged to refund the taxes and is required to be prepared to meet that contingency. If no protest has been lodged, it is generally assumed that taxes paid can be retained to meet authorized public expenditures, and financial provision is not made for contingent refunds" (p. 426). No similar considerations are here present. Moreover, we conclude that plaintiff is not estopped from recovering that which was paid under a mistake of law (cf. CPLR 3005). There is nothing in the record to support the claim that defendants changed their position to their disadvantage as a result of their illegal exaction of moneys from plaintiff — moneys which plaintiff was compelled to pay in order to obtain approval of its plans (cf. *Belmont Homes* v. *Kreutzer*, 6 A D 2d 697, affd. 6 N Y 2d 800). "Whether

it is an attempt to recover money paid under a mistake of law, or for any other relief because of mistake of law, it must always be remembered that a change of position by the defendant may be the real reason for the denial of relief" (7 N. Y. Contracts Law, § 1803, p. 340; see, also, *Byrne* v. *Barrett,* 268 N. Y. 199). The defendants have not expended any moneys or incurred any obligations by reason of the requirement that plaintiff make a cash deposit in lieu of dedicating land. Whatever advantage or benefit the plaintiff may derive necessarily results from the declaration that the code provisions are illegal and void (cf. *Mayor* v. *Sonneborn,* 113 N. Y. 423). In our opinion, conscience and equity require that plaintiff recover what it mistakenly paid and what the defendants illegally collected. Christ, Acting P. J., Hill, Rabin and Benjamin, JJ., concur; Hopkins, J., dissents and votes to affirm the order, with the following memorandum: I am unable to agree with my colleagues. In order to succeed in this action for money had and received, plaintiff must demonstrate that the defendant village has been unjustly enriched and has retained that which in equity and good conscience ought to be returned (*Pink* v. *Title Guar. & Trust Co.,* 274 N. Y. 167, 173; *MacMurray* v. *City of Long Beach,* 292 N. Y. 286, 291). The action is thus cast in equitable principles; and we look to the past conduct of the parties to determine whether the money paid should be recovered (*Schank* v. *Schuchman,* 212 N. Y. 352, 358; *County of Oneida* v. *First Citizens Bank & Trust Co.,* 264 App. Div. 212, 214). Some time before the plaintiff paid the money in issue, the defendant village required that developers of land make provision for a park or parks on the subdivision plat submitted for approval to the Planning Commission (Village Law, § 179-l). This requirement proved difficult to administer as the tracts of land submitted for approval became smaller in size. In lieu of reservation of land for park purposes, the defendant village then required that a cash payment be made by the developer, and that the money so received be deposited in a capital reserve fund for the acquisition and improvement of park lands — a fund authorized by law for that purpose (General Municipal Law, § 6-c). Thus, when the plaintiff submitted its subdivision plat for approval to the defendants, as it was required to do by statute (Village Law, § 179-k), the money in suit was received by the defendant village and was paid into the capital reserve fund. As a result of the approval of the plat, the plaintiff was enabled to file the plat and to have it recorded in the office of the County Clerk (Village Law, § 179-m), and to obtain building permits (Village Law, § 179-o). The plaintiff thereafter sold lots by reference to the subdivision plat, and *did not* seek return of the money paid until nearly two years after the payment. Though in *Gulest Associates* v. *Town of Newburgh* (25 Misc 2d 1004, affd. 15 A D 2d 815) we affirmed a determination that section 277 of the Town Law — a statute comparable to section 179-l of the Village Law — was unconstitutional, we did so with the statement that the statute was unconstitutional " as applied to the facts of [that] case " (15 A D 2d 815, 816). Here the facts differ from *Gulest* in that the defendant village has established a capital reserve fund; and moneys deposited in that account cannot be diverted for any purpose other than that prescribed by the Village Board in creating the fund pursuant to law (General Municipal Law, § 6-c). I am inclined to the view that, under such circumstances, section 179-l of the Village Law is constitutional (cf. Village Law, §§ 169, 290; General Municipal Law, § 241), since in a village of restricted land area such as the defendant village the acquisition and use of land for park purposes are beneficial to all its inhabitants (cf. *Matter of Crane-Berkley Corp.* v. *Lavis,* 238 App. Div. 124), and since the money paid by the developer cannot be withdrawn except for park purposes. But aside from this question, the plaintiff in my opinion

has failed to establish a case that it has been deprived of money which in good conscience ought to be returned. The payment to the defendant village was made without protest and in order to obtain an advantage for the plaintiff. When the payment was made, the plaintiff knew that the proceeds would enter, not the general funds of the defendant village, but a trust fund created by it for the specific purpose of acquiring and improving park lands for the benefit of the whole village. Even the right to challenge the unconstitutionality of a statute is lost when benefits under the statute are accepted. "They [the plaintiffs] cannot assert the invalidity of the proceedings and at the same time share in the benefit resulting from such proceedings. That conclusion is based upon well-recognized principles of fairness and justice, and in accord with an unbroken line of judicial authority. It is immaterial whether we classify these principles in the category of estoppel or of waiver or of implied consent" (*Shepherd* v. *Mount Vernon Trust Co.*, 269 N. Y. 234, 247). Moneys paid under an unconstitutional statute, a fortiori, may not be recovered, where benefits have accrued to the payer. Nor do I think that the equities inherent in this situation are altered by the direction that relief for a mistake shall not be denied merely because the mistake is one of law (CPLR 3005). The court must still determine whether an appropriate case for the exercise of the power has been shown (*Mercury Mach. Importing Corp.* v. *City of New York*, 3 N Y 2d 418, 427). The plaintiff has not only changed its position by the sale of lots within the subdivision plat, but the defendant village has also done so by depositing the moneys received into the capital reserve fund which the village was obligated to use only for the acquisition and improvement of park lands, thus relieving the plaintiff from its prior obligation to set aside a portion of the land in its development for park purposes. These circumstances, in my view, emphasize the lack of equity in plaintiff's action and distinguish it from *Five Boro Elec. Contr. Assn.* v. *City of New York* (12 N Y 2d 146), where duress as a matter of law was found to exist in the exaction of exorbitant license fees for the livelihood which the plaintiffs there pursued. Consequently, I would affirm the order below. [38 Misc 2d 658.]