Gabrielli, J.
By assiduously requisitioning checks for issue and adroitly changing entries in the trust department books of the Lincoln First Bank of Rochester, a trust officer, Richard Jaquish, apparently managed to embezzle $333,829.74. Plaintiff, having reimbursed Lincoln under an employees’ fidelity bond, seeks to recover this sum, less applicable salvage, from defendant Groveland State Bank, the named payee on the fraudulently issued checks.
The principal issue is whether plaintiff, as the subrogee of a drawer-drawee bank which, over a period of more than three years, failed to uncover the fraudulent issuance of 33 of its own checks by one of its employees, and which consistently *256 paid those checks upon presentment for collection, can successfully maintain an action for money had and received against another bank which, though named as payee, deposited the checks to the personal account of its depositor, the errant employee, without, as charged by plaintiff, making an inquiry as to his rights or interests in the instruments. Present also are issues whether the payee bank breached the warranty of good title upon presentment to the drawee and whether the payee bank took the checks in bad faith and with notice of a defense or claim against them.
The essential facts may be briefly stated. On May 12, 1966 Jaquish opened an account with defendant, informing it that his grandmother had recently died and left him a large trust fund, and that, since he would be selling her properties, the account would become very active. Commencing on May 13, 1966, and continuing until September 2, 1969, Jaquish, who had authority to issue trust department checks in the ordinary course of the business of the bank, caused 33 of Lincoln’s checks to be issued and made payable to the order of defendant. These checks were regular in form and varied in amount from $3,000 to $32,500. They were deposited in defendant bank, generally by Jaquish himself, who attached deposit slips directing the funds to his own account. On some occasions, however, he called defendant, or sent a note, requesting that deposit slips be prepared for him. Defendant stamped each check with the customary collecting bank endorsement, i.e., "Pay to the Order of Any Bank, Banker or Trust Co.; All Prior Endorsements Guaranteed”, tentatively credited Jaquish’s account, and presented the checks for payment to Lincoln. No inquiry was made of Lincoln regarding the disposition of the proceeds and, likewise, Lincoln paid each check drawn on itself without any inquiry or objection.
In June, 1969 an internal audit conducted by Lincoln revealed that the Trust Department Dividend’s Receivable Account was overdrawn by approximately $323,000. At that time, as alleged by plaintiff and Lincoln, the shortage was believed attributable to normal deficiencies resulting from the nonreceipt of dividend checks. Later, and in November, 1969, State and Federal bank examiners uncovered false entries in the receivable account. Jaquish was on vacation during the period of this audit and, when he returned on December 15, 1969, he was directed to report to the office of the Federal examiner in Rochester. He did not report as instructed. In *257 stead, he promptly disappeared and his whereabouts are still unknown. The balance of his account with defendant at the time of his disappearance was $334.91.
The complaint sets forth three causes of action: (1) for money had and received, (2) for breach of warranty of good title, and (3) to recover funds received by defendant in bad faith and with notice of a claim or defense to the checks. In its answer, defendant admitted receiving the checks from Jaquish and forwarding them for collection, but otherwise denied the allegations in the complaint.[1]
On cross motions for summary judgment, Special Term granted defendant’s motion for judgment on the third cause of action and otherwise denied the motions on the ground that triable issues of fact remained as to the first two causes of action. On cross appeals, the Appellate Division modified by reversing the order of Special Term insofar as it denied the motion on the first cause of action and granted summary judgment to plaintiff, and otherwise affirmed. Relying on Arrow Bldrs. Supply Corp. v Royal Nat. Bank of N. Y. (21 NY2d 428, 431); Shipman v Bank of State of N. Y. (126 NY 318, 326-327); Sims v United States Trust Co. (103 NY 472, 475-476) and Matteawan Mfg. Co. v Chemical Bank & Trust Co. (244 App Div 404, 412-413, mod 272 NY 411), the Appellate Division held that defendant’s failure to inquire of Lincoln as to the disposition of the proceeds of the checks entitled plaintiff to recover in an action for money had and received. It was further held that even if "Lincoln violated some duty of supervision of its employees, checks and funds owed to Grove-land * * * the loss * * * was occasioned by the superceding act of Groveland in paying out Lincoln’s funds” (44 AD2d 182, 189).
Defendant appeals here as a matter of right from the order of the Appellate Division, and plaintiff appeals pursuant to leave granted by the Appellate Division which certified the following question to this court: "Was the order of the Court at Special Term, to the extent that it denied plaintiff’s motion for summary judgment on the second and third causes of action and to the extent that it dismissed the third cause of action, properly affirmed by the Appellate Division, Fourth Department?”
*258 Directing our attention first to the rationale of the decision below, we think the Appellate Division correctly decided that defendant violated a duty owed to Lincoln by disbursing its money without making any inquiry of the depositor as to his actual or apparent authority to act for Lincoln: However, we cannot agree that the negligence of defendant intervened so as to nonetheless permit plaintiff full recovery against it.
In an action for money had and received, the plaintiff "must show that it is against good conscience for the defendant to keep the money” (Schank v Schuchman, 212 NY 352, 358). Though it may be termed an action at law, it is, of course, founded upon equitable principles aimed at achieving justice, unimpeded by legal niceties (Chapman v Forbes, 123 NY 532, 536; Meyers v Hurley Motor Co., 273 US 18, 24; United States v Jefferson Elec. Co., 291 US 386, 402-403; County of Oneida v First Citizens Bank & Trust Co. of Utica, 264 App Div 212). In County of Oneida (supra, p 214) it was said: "It is the most favorable way in which a defendant can be sued. In such an action the defendant 'may defend himself by everything which shows the plaintiff ex aequo et bono is not entitled to the whole of his demand or any part of it’ ”. Thus it has been held that a depositor’s negligence in examining his monthly bank statement will bar a recovery for money had and received (Arrow Bldrs. Supply Corp. v Royal Nat. Bank of N. Y., 21 NY2d 428, supra; Potts & Co. v Lafayette Nat. Bank, 269 NY 181).
Applying these principles to the instant case, we hold that there are triable issues as to whether plaintiff’s recovery should be barred in whole or in part. After processing and making payment on the instruments presented for collection by defendant, Lincoln, of course, retained possession of the canceled checks. If its trust department were a private depositor, it would have received a monthly statement containing the canceled checks and, as with any depositor, Lincoln was under a duty to examine the items and to uncover any irregularities in its account (see, e.g., Arrow Bldrs. Supply Corp. v Royal Nat. Bank of N. Y., 21 NY2d 428, 432, supra; cf. Uniform Commercial Code, § 4-406). Minimally, Lincoln is chargeable with exercising the same degree of care and control of its accounts that an individual depositor would have been expected to exercise.[2] Indeed, plaintiff does not deny it *259 had such a duty, rather, it asserts, in conclusory fashion and certainly without foundation, that such activities would not have revealed Jaquish’s peculations. However, the record is devoid of any proof to support that conclusion, and, further, it is not even alleged that these basic accounting procedures were performed.
Lincoln may also be chargeable with failing to perform the functions of a drawee bank in a commercially reasonable and prudent manner; a principle which in and of itself requires a trial. For example, some of the items, though payable to the order of defendant, were presented for payment with defendant’s endorsement as collecting bank and stamped for deposit by Jaquish, an individual depositor. If.it is true, as defendant claims and seeks to prove upon a trial, that such facts would put a prudent commercial bank on notice that something was amiss, then Lincoln’s failure to act thereon contributed to the total loss. We conclude, therefore, that since the burden is on plaintiff to prove that defendant cannot in good conscience retain the moneys, and since reasonable and prudent action by Lincoln would have revealed the defalcations and prevented further losses, plaintiff should be precluded from recovery by way of summary judgment.
We note, however, that, as it may be found upon the trial, Lincoln may not be responsible for the original issuance of a given check by Jaquish on the theory that the negligence of a payee bank in paying out funds to a depositor without actual or apparent authority to receive the moneys may be considered a supervening cause. However, the same does not obtain where it may be shown that Lincoln failed to exercise reasonable care after the processed items were returned to it (Potts & Co. v Lafayette Nat. Bank, 269 NY 181, supra) and, when, in failing to exercise that care in preventing additional checks to be issued by its errant employee, its consequent failure to act reasonably and promptly, contributed directly to the losses incurred (see Arrow Bldrs. Supply Corp. v Royal Nat. Bank of N. Y., 21 NY2d 428, supra; Potts & Co. v Lafayette Nat. Bank, 269 NY 181, supra).
*260 A trial of the issues will permit a full development of the factual background relating to the fault, if any, of Lincoln, focusing especially upon when it first became aware of the peculations of its trust officer, or, more importantly, when it should have become aware of his actions and, then, the resulting relative liabilities of plaintiffs subrogor and defendant. Hence, a determination of the legal responsibility of the parties based on the facts to be developed, can be had only after the complete evidence is presented to the trier of the facts.
Turning next to its second cause of action, plaintiff asserts, without merit we think, that defendant is liable for breach of the warranty of good title, made pursuant to section 4-207 (subd [1], par [a]) of the Uniform Commercial Code which states that:
"(1) Each customer or collecting bank who obtains payment or acceptance of an item and each prior customer and collecting bank warrants to the payor bank or other payor who in good faith pays or accepts the item that
"(a) he has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title”. "Good title” is not specifically defined in the code, but it is apparent that the term is not used therein in its general legal sense (see Some Petty Complaints About Article 3, 65 Mich L Rev 1315, 1323, n 28; Comment, 68 Col L Rev 1573, 1585). While, on the other hand, it seems readily apparent that the warranty was intended primarily to permit a drawee the right to recover from the party presenting an instrument which has a forged indorsement (Official Comment 3 to the Uniform Commercial Code, § 3-417, subd [1], par [a] referred to in the Comment to Uniform Commercial Code, § 4-207, subd [1], par [a]; McKinney’s Cons Laws of NY, Book 62 Yz, p 356),[3] the warranty is irrelevant in this case since there are no forged indorsements.
Finally, the contention that defendant took the checks in *261 bad faith and with notice of a defense or claim against them is without substance. Neither the authorities cited nor the evidence relied upon lend merit to this claim.
Accordingly, the order appealed from should be modified, with costs to abide the event, to the extent of reversing the grant of summary judgment on the first cause of action and to award summary judgment to defendant on the second cause of action, and, as so modified, affirmed. The certified question should be answered in the affirmative.

. Defendant also pleaded three affirmative defenses, none of which is germane to the issues presented herein.

. Plaintiff, relying on Wagner Trading Co. v Battery Park Nat. Bank (228 NY 37, *259 41), argues that the drawer’s duty to inspect returned checks runs only to the bank with which it has contractual relations. However, the rule iterated in Wagner Trading (supra) and developed in earlier cases (Critten v Chemical Nat. Bank, 171 NY 219, 229; Com Exch. Bank v Nassau Bank, 91 NY 74, 80), was founded on the doctrine of privity of contract which we have since found "not so conclusive as it once was” (City of New York v Bronx County Trust Co., 261 NY 64, 70; cf. Codling v Paglia, 32 NY2d 330).

. Official Comment 3 to section 3-417 (subd [1], par fa]) of the Uniform Commercial Code states: "3. Subsection (l)(a) retains the generally accepted rule that the party who accepts or pays does not 'admit’ the genuineness of indorsements, and may recover from the person presenting the instrument when they turn out to be forged. The justification for the distinction between forgery of the signature of the drawer and forgery of an indorsement is that the drawee is in a position to verify the drawer’s signature by comparison with one in his hands, but has ordinarily no opportunity to verify an indorsement.”