**FIRST NATIONAL BANK OF ARIZONA, Plaintiff,**

v.

**PLYMOUTH–HOME NATIONAL BANK, Defendant/Third-Party Plaintiff,**

v.

**William Price, d/b/a Best Paving Company, Third-Party Defendant.**

Civ. A. No. 80–1276–Z.

United States District Court, D. Massachusetts.

April 22, 1982.

Edward J. Barshak, Regina E. Roman, Sugarman, Rogers, Barshak & Cohen, Boston, Mass., for plaintiff.

Francis H. Fox, Susan A. Shepard, Amy B. Cohen, Bingham, Dana & Gould, Boston, Mass., for defendant Plymouth.

John T. Spinale, Brockton, Mass., for defendant Price.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

This is an action brought by First National Bank of Arizona (First National) against Plymouth-Home National Bank (Plymouth-Home) to recover the proceeds of a check containing a forged indorsement, resultant finance charges, interest and expenses, including attorney's fees. Jurisdiction is based on diversity of citizenship. First National has moved for summary judgment on Count I of the complaint, which alleges that Plymouth-Home breached its presentment warranties under Section 4–207 of the Uniform Commercial Code. The motion is allowed.

The pleadings, responses to certain discovery requests, depositions and documents produced disclose the following undisputed facts. The check, in the amount of $166,-572.67, was drawn by Perini Corporation (Perini) on its account at First National, on November 9, 1979. It represented payment for work performed in connection with a construction project, and was properly made payable to Best Paving Company (Best Paving) and Trimount Bituminous Products (Trimount). Although the parties had previously agreed that Perini should mail payment to Trimount, it inadvertently sent the check to Best Paving. On November 19, 1979, the check was deposited in the Best Paving account at Plymouth-Home. The check contained the typewritten indorsement of both Best Paving and Trimount. The indorsement of Trimount was unauthorized. Plymouth-Home immediately credited the Best Paving account and transmitted the check through the Federal Reserve system to First National. On or about November 27, 1979, upon presentment through banking channels, First National paid Plymouth-Home the full amount of the check.

When Trimount inquired of Perini as to the whereabouts of the check, Perini contacted First National by telephone several times early in December to ascertain whether the check had been paid. An employee at First National mistakenly informed Perini that the check had not been paid. On December 10, 1979 Perini received the November bank statement, which revealed that payment had in fact been made. However, Perini failed to notice the payment and clearing of that check. On December 12, 1979 a stop payment order issued on the check at the request of Perini. On December 14 Perini issued a second check, payable to the original payees, Best Paving and Trimount, and mailed it to Trimount.

In early January, on review of the December bank statement, Perini noticed the discrepancy and realized that the original check had cleared in November. Perini promptly telephoned First National to alert it to the fact that there was a potential problem. On January 11, First National sent an affidavit of forgery to Perini. On January 17, after a series of meetings, Perini ascertained that an individual at Best Paving had typed the indorsement of Trimount on the check without authorization. Perini then arranged for the President of Trimount to sign the affidavit of forgery and forwarded it to First National on January 21, 1979. Upon receipt of the document on January 23, First National credited the Perini account in the amount of the check and sought recovery of the proceeds through banking channels from the last indorsing bank, defendant Plymouth-Home.

The Uniform Commercial Code provides a comprehensive body of law, which will ensure a uniform approach to the allocation of loss in commercial transactions in all jurisdictions where it has been adopted. Since both Massachusetts and Arizona have enacted the Code in substantially the same form, all decisions interpreting relevant Code provisions are applicable.

Article Four covers the bank collection process and the responsibilities of different parties within that context. The Code is explicit in its allocation of liability where a collecting bank, such as Plymouth-Home, forwards a check through the banking process to a drawee or payor bank such as First National. § 4–207(1), entitled "Warranties of Customer and Collecting Bank on Transfer or Presentment of Items . . .", provides that:

> (1) Each customer or collecting bank who obtains payment or acceptance of an item and each prior customer and collecting bank warrants to the payor bank or other payor who in good faith pays or accepts the item that
>
> (a) he has good title to the item or is authorized to obtain payment or acceptance on behalf of one who has good title;
>
> . . .

■ If a check contains a forged indorsement, the depository bank does not have good title to the instrument and the warranty is breached. *Girard Bank v. Mount Holly State Bank*, 474 F.Supp. 1225, 1230 (D.N.J.1979); J. White & R. Summers, Uniform Commercial Code 598 (1980). Upon a breach of the warranty, § 4–207(3) provides that recovery shall be limited to "the consideration received by the customer or collecting bank responsible plus finance charges and expenses related to the item, if any."

■ The Code also defines the duties which a bank and its customer owe each other. Section 4–401(1) provides that a bank may only charge its customer for an item which is "properly payable". An item with a forged indorsement is not "properly payable" and may not be charged to a customer's account. *Perini Corp. v. First National Bank of Habersham County*, 553 F.2d 398, 403 (5th Cir.1977). *See also* J. White & R. Summers, *supra*, at 658–59 (1980). If such an item has been charged, the amount must be recredited upon discovery of the forged indorsement.

This scheme for allocating losses from forged indorsements is consistent with the overriding policy of the Code to place liability for forgery on the party taking from the forger. That party is in the best position to

detect the forgery and avoid the loss.[1] *Girard, supra,* at 1230–31. Within this general framework, however, the Code specifically grants to the collecting bank a number of defenses, several of which Plymouth-Home asserts.

Plymouth-Home argues, first, that plaintiff waived defenses it had against Perini under § 4–406 and is, therefore, under § 4–406(5) estopped from claiming against Plymouth-Home. It contends, second, that Perini and First National were negligent and that such negligence precludes judgment for First National under both §§ 4–406 and 3–406. Finally, defendant asserts that First National delayed unreasonably in claiming a breach of warranty and that such delay bars, or, at least limits, recovery under § 4–207(4).

### § 4–406(5) Defense

§ 4–406(1) defines the customer's duties to its bank. He "must exercise reasonable care and promptness to examine the statement and items to discover his unauthorized signature or any alteration on an item and must notify the bank promptly after discovery thereof." Should a dispute arise between the customer and his bank, a customer who has failed to comply with those duties is precluded from asserting against the bank:

> (a) his unauthorized signature or any alteration on the item if the bank also establishes that it suffered a loss by reason of such failure; and
>
> (b) an unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank after the first item and statement was available to the customer for a reasonable period. . . . § 4–406(2)(a) and (b).

§ 4–406(4) provides further that the customer who does not discover and report to the bank his unauthorized signature or any alteration on the face or back of the item within one year or an unauthorized indorsement within three years is precluded from asserting such unauthorized signatures, indorsements, or alterations against the bank.

These provisions regarding a customer's duty to its bank may provide a collecting bank with a defense to a claim for breach of a presentment warranty. Under § 4–406(5) a payor bank which has waived a valid defense against a claim of a customer may not turn around and assert against the collecting bank a claim based on an unauthorized signature or alteration which had given rise to that customer's claim. That section, however, clearly limits the drawee bank's obligations to litigate with its customer rather than with the collecting bank to cases where the customer has breached duties imposed "under this section".

Plymouth-Home asserts that First National had a valid defense against any claim by Perini in that the latter failed to exercise reasonable care to discover the forged indorsement early in December 1979 upon receipt of the November bank statement. The determinative question therefore is what duties § 4–406 imposed upon Perini to discover and report the forged indorsement.

■ The Code clearly distinguishes between the customer's duty to discover a forgery of his signature or any alteration on a check and his duty to discover a forged indorsement.[2] Subsection 4 imposes a limitations period of one year on a customer's claim arising out of "his unauthorized signature" and three years on claims from "any unauthorized indorsement". Comment 5 explains that this distinction

> recognizes that there is little excuse for a customer not detecting an alteration of his own check or a forgery of his own signature. However, he does not know the signatures of indorsers and may be

---

1. Of course, the collecting bank may in turn attempt to collect from the forger himself under the same warranties. Indeed, Plymouth-Home has impleaded William Price, d/b/a Best Paving for exactly this purpose.

2. Indeed, at least one court has held on facts similar to those in the instant case, that § 4–406 cannot be interpreted to require the customer to discover forged indorsements at all. *East Gadsden Bank v. First City National Bank of Gadsden,* 50 Ala.App. 576, 281 So.2d 431 (1973).

delayed in learning that indorsements are forged.

For the same reason § 4–406(1) mandates that a customer exercise reasonable care and promptness in examining the statement to discover *his* unauthorized signature. It imposes no explicit duty upon the customer to discover forged indorsements on examination of the statement. § 4–406(2) does implicitly require the customer to discover *an* unauthorized signature, but only if it is the second forgery by the same wrongdoer and if the bank had paid the first item in good faith.

■ In addition to the specific but limited obligation concerning forged indorsements, § 4–406 imposes a general duty to act in a reasonable manner to reconcile bank statements and detect problems. Although a customer is under no duty to check for forged indorsements, one who has notice of something wrong with an indorsement must exercise reasonable care to investigate and to notify the bank. Comment 6; *see also* Whaley, Negligence and Negotiable Instruments, 53 N.C.L.Rev. 1, 39 n. 135 (1974) (general rule is that customer is under no duty to check for forged indorsements, absent special circumstances).

Thus courts have imposed a duty to carefully reconcile statements and checks where the evidence showed that the drawer had notice of a problem with a check and that the bank suffered a loss because of the drawer's carelessness. *See, e.g., Ashley-Hall Interiors, Ltd. v. Bank of New Orleans,* 389 So.2d 850, (La.Ct.App.1980); *Federal Insurance Co. v. Groveland State Bank,* 372 N.Y.S.2d 18, 37 N.Y.2d 252, 333 N.E.2d 334 (1975); *Long Island Trust Co. v. National Bank of North America,* 28 U.C.C. Rep.Serv. 1442, 1445 (N.Y.Sup.Ct.1980).

■ In summary, § 4–406(5), which precludes a payor bank from waiving defenses it might have against its customer under § 4–406(1)–(4), limits the latter's responsibilities with respect to forged indorsements. A customer is under an affirmative duty to discover his own forged signature and any material alteration. Where he has failed to do so, the bank may not seek recovery from the collecting bank under § 4–207. It must instead litigate the issue with its customer. However, when the customer has failed to discover a forged indorsement, the bank may claim against him only if the forgery is at least the second instance of similar wrongdoing or the customer was otherwise on notice of a problem with the check and the bank has suffered a loss by virtue of the customer's negligent failure to discover the pattern or noticeable problem.

■ This case involves a single forged indorsement. Perini's only duty was to detect and report it within three years. Since Perini in fact discovered and reported the forgery within a period of little more than one month, it violated no duty to First National under § 4–406. Moreover, First National paid the check in November before delivery to Perini of the November bank statement. Therefore, even if Perini was negligent in early December when it failed to discover the payment upon examination of the bank statement, its negligence did not cause the bank's loss. Because Perini did not fail in its duty to First National under § 4–406, the latter had no valid defense to Perini's claim, and § 4–406(5) does not bar its claim over against Plymouth-Home.

### § 3–406 Defense

Plymouth-Home argues that § 3–406, a broader negligence provision, which precludes a negligent drawer from asserting a claim on an instrument, should be incorporated into § 4–406(5). § 3–406 provides, in part "[a]ny person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against .·. . . a drawee." Plymouth-Home contends that Perini's negligence in mailing the check to Best Paving rather than to Trimount "substantially contributed" to the forgery.

■ However, § 4–406(5) does not include the defense of negligence covered by § 3–406. § 4–406(5) is expressly limited to

defenses "under this section". Four courts which have squarely addressed the question on very similar facts have explicitly refused to incorporate § 3–406 negligence into § 4–406. *Girard Bank v. Mount Holly State Bank, supra; Mellon National Bank and Trust Co. v. Merchants Bank of New York,* 15 U.C.C.Rep.Serv. 691 (S.D.N.Y. 1972); *Clarkson v. Selected Risks Insurance Co., et al.,* 170 N.J.Super. 373, 406 A.2d 494 (1979); *Long Island Trust Co., supra.* The only contrary case law cited by defendant is dicta in an old Massachusetts case, *Stone & Webster v. First National Bank,* 345 Mass. 1, 184 N.E.2d 358 (1962), and a 1970 New York case *Canadian Imperial Bank of Commerce v. Federal Reserve Bank,* 64 Misc.2d 959, 316 N.Y.S.2d 507 (1970), which was expressly rejected in *Mellon, supra.*

Defendant relies on a policy argument that the failure to incorporate the § 3–406 negligence defense into § 4–406 will impose an inequitable burden on the collecting bank. Under certain circumstances the collecting bank is unable to detect forged indorsements caused by a drawer's negligence, yet, since no Code provision permits a collecting bank to assert a cause of action against a negligent drawer, the innocent collecting bank will be forced to bear the loss. *See Girard, supra,* at 1235; Comment, Allocation of Losses from Check Forgeries Under the Law of Negotiable Instruments and the Uniform Commercial Code, 62 Yale L.J. 417 (1953).

■ This is not a case where the collecting bank is being forced to bear a loss which it could not have prevented. Plymouth-Home is not an innocent party. In honoring a check made payable to more than one payee over a typewritten indorsement, Plymouth-Home failed to protect itself against the risk of loss. *See Bank of the West v. Wes-Con Development Co.,* 15 Wash.App. 238, 241, 548 P.2d 563, 566 (1976) (check with typewritten indorsement suspect on its face); *Atlas Building Supply Co.*

*v. First Independent Bank of Vancouver,* 15 Wash.App. 367, 373–74, 550 P.2d 26, 30 (1976) (failing to ascertain whether endorsement of co-payee is authorized not in accord with reasonable commercial banking standard). This is precisely the situation anticipated by the drafters of the Code. As the party taking from the forger and therefore best able to detect the forgery, the collecting bank which pays over a forged indorsement should bear the loss.

### § 4–207 Defense

■ Plymouth-Home argues that it is at least entitled to limit First National's recovery under § 4–207(4). That subsection provides that "[w]hen a claim for breach of warranty under this section is not made within a reasonable time after the person claiming learns of the breach, the person liable is discharged to the extent of any loss caused by the delay in making claim." To the extent, therefore, that a drawee bank delays unreasonably in presenting its claim for breach of warranty, the collecting bank is not liable for the amount of loss it sustained because of that delay. However, the delay is to be measured from the date the drawee actually learned of the forgery. *Birmingham Trust National Bank v. Central Bank & Trust Co.,* 49 Ala.App. 630, 637, 275 So.2d 148, 153 (1975). That is most properly set at the date on which the bank is informed of the existence of the affidavit of forgery, for until that time the claim is still speculative. *Twellman v. Lindell,* 534 S.W.2d 83, 99 (Mo.Ct.App.1976).[3]

Plymouth-Home contends that First National delayed unreasonably in giving notice of the forgery. It asserts that First National knew of the forged indorsement early in January when Perini first telephoned to inform the bank that there was a problem with the check, but that First National made no effort to contact Plymouth-Home until January 23. That delay, it contends,

---

**3.** In most cases in which the § 4–207(4) defense succeeded the party claiming breach of warranty delayed months or years from the time it became aware of a breach. *See Phoenix Assurance Co. v. Davis,* 126 N.J.Super. 379, 314 A.2d 615 (1974) (10 weeks); *Lewittes Furniture Enterprises, Inc. v. Peoples National Bank,* 82 Misc.2d 1013, 372 N.Y.S.2d 830 (1975) (3 years).

was unreasonable, and it is therefore not liable for that amount of loss which it could have avoided had it been notified in a timely manner.

First National received the first tentative phone calls suggesting the possibility of forgery in early January. It received the affidavit of forgery on January 23 and immediately sent the request for payment through banking channels. Plymouth-Home received the affidavit and request on January 29, and it does not argue that First National failed to act in a timely manner after its receipt of the affidavit on January 23. Rather it focuses on the delay from the time of Perini's first inquiries. Because First National had no concrete and certain knowledge of the forgery until January 23, it was not in a position to act until that date. *See, Twellman v. Lindell, supra.* Plymouth-Home was notified of the claim six days later. That does not constitute an unreasonable delay, and Plymouth-Home's § 4–207(4) defense fails.

■ Finally, defendant has raised a number of common law defenses which it alleges First National could have, and therefore should have, asserted against Perini. This action concerns the breach of presentment warranties under the Code and is therefore governed by the Code provisions. Because the Code was designed to provide a uniform system for the allocation of liability in cases such as this, the relevant Code sections are controlling. Other possible defenses which First National might have had against its customer cannot affect its rights to recover under the Uniform Commercial Code.

Accordingly, because defendant has failed to demonstrate that there are any material facts in dispute and because plaintiff has shown that it is entitled to relief as a matter of law, summary judgment on Count I is granted. However, this is not an appropriate case for the award of attorney's fees. Although defendant has forced plaintiff to litigate its claim, it has not behaved egregiously in doing so. Therefore, the request for attorney's fees is denied.