[643 NYS2d 767]

SEAMAN CORPORATION, Appellant-Respondent, v BINGHAMTON SAVINGS BANK, Respondent, and IBM ENDICOTT/OWEGO EMPLOYEES FEDERAL CREDIT UNION, Respondent-Appellant.

Third Department, June 13, 1996

## APPEARANCES OF COUNSEL

*Coughlin & Gerhart,* Binghamton *(Paul J. Sweeney* of counsel), for appellant-respondent.

*Hinman, Howard & Kattell,* Binghamton *(James M. Hayes* of counsel), for respondent.

*Aswad & Ingraham,* Binghamton *(William M. Thomas* of counsel), for respondent-appellant.

## OPINION OF THE COURT

YESAWICH JR., J.

Pursuant to a "joint check and payment agreement" entered into by defendant IBM Endicott/Owego Employees Federal Credit Union (hereinafter IBM-CU), plaintiff and Prodec Roofing & Insulation Systems, IBM-CU issued its own check in the amount of $36,629.80 payable to plaintiff and Prodec, as joint payees, for roofing work. Prodec endorsed the check and presented it to defendant Binghamton Savings Bank (hereinafter BSB) for payment on October 17, 1989. Notwithstanding the lack of plaintiff's endorsement, BSB accepted the check, deposited the funds into an account held by Prodec alone and forwarded the check to a Federal Reserve clearinghouse, which credited BSB's account and debited that of IBM-CU. Shortly thereafter, IBM-CU received the check from the clearinghouse and debited its own account.

Plaintiff contends that after discovering, in February 1991, that it had not been paid for the supplies it had furnished in connection with the work performed on IBM-CU's premises, it engaged in further investigation which revealed that the check had been negotiated without its endorsement. Its demand upon BSB and IBM-CU to return the money was rejected, as was IBM-CU's request that the clearinghouse charge the amount of the check back to BSB. Plaintiff then commenced this suit, asserting causes of action sounding in conversion against IBM-CU and BSB, and also charging IBM-CU with negligence and breach of the joint check agreement. IBM-CU and BSB both answered and interposed cross claims against each other.

After some discovery was had, plaintiff moved for summary judgment against both defendants; IBM-CU cross-moved for

dismissal of all claims against it and for summary judgment on its cross claim against BSB. With the exception of plaintiff's third cause of action, alleging that IBM-CU breached the joint check agreement, which was dismissed, Supreme Court found none of the parties' claims amenable to summary judgment, prompting these appeals by plaintiff and IBM-CU.

We agree, for the reasons stated in Supreme Court's well-considered opinion, that summary judgment is not appropriate at this juncture with respect to plaintiff's first and second causes of action (charging defendants with conversion), and that questions of fact prohibit a determination in IBM-CU's favor on its cross claim against BSB. Although plaintiff contends that defendants had ample opportunity to conduct discovery and that their failure to fully avail themselves of that opportunity precludes reliance upon CPLR 3212 (f) as grounds for avoiding summary judgment, the record demonstrates that it was not until the present motions were brought that defendants became aware of Prodec's practice of paying plaintiff on account, rather than on an invoice or job basis. As defendants note, this circumstance suggests that plaintiff may have, in fact, received the funds in question and that further recovery would constitute unjust enrichment (*see, Tonelli v Chase Manhattan Bank*, 41 NY2d 667, 670-671). Because the information necessary to establish this defense is solely within plaintiff's knowledge (Prodec is no longer in existence), Supreme Court did not err in finding that defendants should have an opportunity to conduct discovery with respect thereto (*see, Sanders Constr. Co. v Bankers Trust Co.*, 123 AD2d 251, 252).

Nor is IBM-CU entitled, as a matter of law, to recover on its cross claim against BSB for breach of the warranties of presentment (*see*, UCC 4-207). Prefatorily, it bears mentioning that, as BSB concedes, UCC 4-406—which requires a bank customer to exercise reasonable care and promptness to discover and report any unauthorized signature or alteration—does not impose upon IBM-CU a duty to inspect the check for missing endorsements, for IBM-CU is not BSB's customer. Moreover, UCC 4-406 does not apply, on its face, to missing endorsements (*see, Murray Walter, Inc. v Marine Midland Bank*, 103 AD2d 466, 467), and even if the statute did apply as between IBM-CU and BSB, the latter's admitted negligence would cancel its mitigating effect (*see*, UCC 4-406 [3]; *Putnam Rolling Ladder Co. v Manufacturers Hanover Trust Co.*, 74 NY2d 340, 347).

Rather, as Supreme Court found, the question presented is whether IBM-CU, as drawer/drawee of a check for a substantial amount of money, was negligent in failing to inspect the check individually when presented, such that the resulting delay in bringing its claim against BSB should be deemed unreasonable, and IBM-CU's recovery limited accordingly (*see*, UCC 4-207 [4]). The conflicting evidence with respect to whether IBM-CU's procedures constituted acceptable banking practice is sufficient to raise a triable question of fact in this regard. BSB also presented the requisite proof that it suffered a loss as a result of IBM-CU's delay (*see, ibid.*).

Also rightly denied were those portions of IBM-CU's motion seeking the dismissal of BSB's cross claim and plaintiff's fourth cause of action, both of which sound in negligence. Being a drawer/drawee in possession of its own canceled checks, IBM-CU had a common-law duty "to examine the items and to uncover any irregularities in its account" (*Federal Ins. Co. v Groveland State Bank*, 37 NY2d 252, 258),* and the record evidence, when viewed in the light most favorable to plaintiff and BSB, could support a finding that IBM-CU failed to act reasonably in this respect.

CARDONA, P. J., MIKOLL, CREW III and CASEY, JJ., concur.

Ordered that the order is affirmed, without costs.

---

* While a drawer that is not a drawee bank may not have a duty to examine its checks for forged endorsements (*see, National Sur. Co. v President & Directors of Manhattan Co.*, 252 NY 247, 254), it is unclear whether this is so when an endorsement is missing entirely, a circumstance much more easily detected (*see, Potts & Co. v Lafayette Natl. Bank*, 269 NY 181, 189). Moreover, in view of the rationale behind this rule—that the drawer has a right to rely upon the drawee bank to make the necessary inspection (*see, National Sur. Co. v President & Directors of Manhattan Co., supra*, at 254)—it would appear to be inapplicable where, as here, the drawer and drawee are one and the same.